---

### In re CHAPMAN.

(Supreme Court, Appellate Division, Second Department. June 18, 1909.)

**1. TAXATION (§ 861\*)—TRANSFER TAXES—PRIOR TRANSFER.**

Where property passed by will at a time when no transfer or inheritance tax statute was in force, the property transferred could not be subjected to a tax imposed by subsequent legislation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1676; Dec. Dig. § 861.\*]

**2. WILLS (§ 634\*)—CONSTRUCTION—VESTED ESTATES.**

Testator gave to trustees an undivided share of his estate for the benefit of his daughter for life, and at her death to her appointee, and, in case she failed to make such appointment, then to her lawful issue in the same manner as if she had died intestate owning the property. *Held*, that the daughter's children living at testator's death took a vested remainder in the property so bequeathed, subject to open and let in afterborn children or to be defeated as to each death during the daughter's

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lifetime without issue. or by the daughter's valid exercise of the power of appointment.

[Ed. Note.—For other cases. see Wills, Dec. Dig. § 634.*]

**3. TAXATION (§ 861*)—TRANSFER TAXES—ELECTION.**

Testator created a trust for the benefit of his daughter for life, and at her death to such persons as she might appoint, in default of which the fund should go to her issue. She appointed her children to receive the fund. *Held*, that their defense of a proceeding to assess a transfer tax against their interests constituted a sufficient election to take under their grandfather's will, and hence, since their mother's will did not alter their pre-existing interest in the property, such interest was not subject to a transfer tax based on the statute passed after the grandfather's death.

[Ed. Note.—For other cases, see Taxation; Dec. Dig. § 861.*]

**4. POWERS (§ 31*)—EXECUTION.**

The general rule that a will takes effect from testator's death is applicable with reference to the execution of a testamentary power.

[Ed. Note.—For other cases, see Powers, Dec. Dig. § 31.*]

Woodward and Miller, JJ., dissenting.

Appeal from Surrogate's Court, Kings County.

Proceedings for the appraisal of the property of Maria B. Chapman for the assessment of a transfer tax. From an order reversing an order of the Surrogate's Court of Kings County fixing the tax (61 Misc. Rep. 593, 115 N. Y. Supp. 981), the State Comptroller appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, MILLER, and BURR, JJ.

William W. Wingate, for appellant.

Fritz W. Hoeninghaus (James Allison Kelly, on the brief), for respondents.

BURR, J. John Davol died in 1878, leaving a last will and testament dated November 21, 1874. There was then no statute in force which imposed an inheritance or transfer tax. Subsequent legislation could not authorize a tax upon the transfer of property effected solely by means of his will. Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791. By his will he gave to trustees an undivided share of his estate in trust for the benefit of his daughter, Maria B. Chapman, to apply to her use the interest and income thereof during her life. He further provided that at the death of his said daughter the trustees named in his will were to pay over all property, proceeds, and estate held by them in trust for the benefit of his said daughter "to such person or persons and for such estate and use, and with and under such trusts, powers, limitations, and restrictions and discretion as said daughter shall lawfully by her last will and testament direct, create and appoint. If such daughter should fail to lawfully exercise such power of disposition by her will, or if for any cause a reversion should occur as to the same or any part thereof, they shall pay the same to the lawful issue of such daughter, in the same manner as if such daughter had died intestate owning the same." At the date of his death his daughter had three sons, Edwin N. Chapman, John D.

Chapman, and Harold W. Chapman. Subsequently a fourth son was born, Marvin A. Chapman, and all of these sons survived her. Upon the death of John Davol, Mrs Chapman's sons then living took a vested remainder in that portion of the estate devised and bequeathed in trust for her benefit, subject to open and let in after-born children, or to be defeated by the death of either of said children during her lifetime without issue. Moore v. Littel, 41 N. Y. 66; Matter of Tompkins, 154 N. Y. 634, 49 N. E. 135; Stringer v. Young, 191 N. Y. 157, 83 N. E. 690. This vested estate in remainder was also subject to be defeated by the valid and effective exercise of the power of appointment given to her, provided such power of appointment increased or diminished the estate which her children took under their grandfather's will, or affected in any degree the value thereof. Matter of Lansing, 182 N. Y. 238, 74 N. E. 882.

Under Mrs. Chapman's will, although she in form executed her power of appointment, it did not effectively transfer any property whatever, for her children took from their grandfather precisely what she attempted to give them, and nothing was added to or taken away from the gift by the exercise of the power through her will. The execution of the power left the title where it was before, and the result is the same as if there had been no power to exercise. Matter of Lansing, supra. Under Mrs. Chapman's will, in the fourth clause thereof, she gave and devised the share of her father's estate of which she had received the beneficial income in like division among her sons as she had thereinbefore devised and bequeathed her residuary estate. That residuary estate she divided into four parts, giving one of such parts to each of her sons. This is all of her will that ever became operative. It is true that there was a provision in her will that one of these parts should be held in trust for each of her sons until they attained the age of 28 years (afterwards changed by her codicil so that the period of the termination of the trust was 25 years). Each of her sons was more than 25 years of age at the time that she died. As a general rule a will takes effect from the death of the testator, and not from the date of its execution. This is as true with regard to the execution of a power as with regard to any other provision of a will. Matter of Haggerty, 128 App. Div. 479, 112 N. Y. Supp. 1017. It is not necessary to define the exceptions to this rule, since none of them apply in this case. All of the provisions of Mrs. Chapman's will relative to holding any portion of her estate in trust for either of her sons must be construed precisely as though the will had contained this additional clause:

"If at the time of my death all or any of my sons shall have attained the age of twenty-five years, the provisions contained in this my will relative to holding any portion of my estate in trust for him shall cease and be inoperative, and I give and devise the one-fourth of my estate or of the estate of my father in respect to which I have a power of appointment to him absolutely."

That is precisely the estate which was given to them by their grandfather's will. It has been heretofore suggested that the estate which her sons took upon the death of their grandfather, John Davol, was a vested estate in remainder. Even if it were contingent, it was an in-

terest acquired at the instant of their grandfather's death, and became a property right which could not be cut down by the subsequent imposition of a transfer tax. Matter of Lansing, supra. The suggestion has been made that the children of Mrs Chapman declined to elect whether they would take under their grandfather's will, or under the power of appointment in their mother's will. The election need not be in any particular form, and the position taken by them in connection with the imposition of the transfer tax is a sufficient election if one were absolutely necessary.

I think that the surrogate was right, and the order appealed from should be affirmed, with costs.

JENKS and GAYNOR, JJ., concur.

WOODWARD, J. (dissenting). John Davol died in 1878, leaving a last will and testament, by the terms of which he created a trust fund of $165,109.18 for the use and benefit of Maria B. Chapman, his daughter, now deceased. This will, which bears date of November 21, 1874, provides, in its eighth clause, that:

"At the death of any daughter of mine who shall survive me, I order and direct my said trustees to pay over all property, proceeds and estate held by them in trust, by virtue of either or both the trusts for the benefit of my daughters herein to such person or persons and for such estate and use, and with and under such trusts, powers, limitations, and restrictions and discretion as said daughter shall lawfully by her last will and testament direct, create and appoint. If such daughter shall fail to lawfully exercise said power of disposition by her will, or if for any cause a reversion should occur as to the same or any part thereof, they shall pay the same to the lawful issue of such daughter, in the same manner as if such daughter had died intestate owning the same."

Maria B. Chapman, one of the daughters thus provided for, died on the 20th day of July, 1908, leaving a last will and testament, dated January 21, 1889, with a codicil, modifying the age limit in the trust provision from 28 to 25 years, bearing date of May 21, 1901. This will provides, in its fourth clause, that:

"Whereas, under and by virtue of the provisions of the will of my father, the power of appointment and disposition by will is given to me, in respect to so much of his estate, as by said will is directed to be held in trust for my benefit, during my life, I do therefore will, order and direct that said estate, real and personal, shall be taken, divided and held in trust, in the same manner for the like purposes, and in the same division, and under the same limitations, restrictions and discretion by my said executors and trustees as is hereinbefore provided respecting my residuary estate; and thereafter I give and devise the same in the same manner in like division among my sons and their lawful issue, or among my surviving sons, in case of any dying without lawful issue, as I have hereinbefore devised and bequeathed my residuary estate."

The residuary estate was given to trustees to hold and distribute the income until each of her four sons should reach the age of 28 years, whereupon the several trusts were to terminate, with a discretionary power in the trustees to pay over any part of the fund on the son reaching 21 years of age. It was further provided in the codicil that the age limit of 28 years should be reduced to 25, and the testatrix died in

July, 1908, after each of her four sons had arrived at the age of 25 years.

On the 6th day of October, 1908, the learned Surrogate's Court made and entered an order fixing the transfer tax upon this trust property thus treated in the will of decedent, and on the 23d day of February the learned surrogate entered an order reversing this determination, basing his action, apparently, upon Matter of Lansing, 182 N. Y. 238, 74 N. E. 882. The State Comptroller appeals from this order.

We are of the opinion that the learned surrogate has misapprehended the effect of the decision in Matter of Lansing, supra, and that it is error to hold that the trust estate is not liable for the transfer tax under the provisions of subdivision 5 of section 220 of the transfer tax act (Laws 1896, p. 868, c. 908, as amended by Laws 1905, p. 828, c. 368, § 1). In Matter of Lansing, supra, the will divided the estate into equal parts, and then provided that:

"One of said equal portions, I give and devise to the issue collectively of each of my children who shall have died during my life, leaving issue, to have and to hold to such issue in fee simple absolute. One other of said equal portions I give and devise to the persons hereinafter appointed as trustees for each of my children living at the time of my death to have and to hold such portion of each child in severalty, in trust during the life of such child and to receive the rents, issues and profits thereof during such life, and to apply the same to the use of such child during her life, and after the death of each of my children I give the portion so held in trust for her to her heirs at law, subject, however, to the power of such child to devise, hereinafter contained."

The eighth clause of the will provided that:

"As to the portions of each of my children devised by the sixth item of this, my will, to the trustees for life of such child, and after the death of such child to the heirs at law of such child, I hereby authorize each child by last will duly executed to dispose of the remainder in fee after the termination of the trust estate by her death among her heirs at law and her collateral relatives in such proportion and manner and with such limitations as she may desire, and I declare the devise of each remainder at the foot of the sixth item of this my will to the heirs at law to be subject to this power given to each of my children."

That is, the will created a trust for each of his living children, with remainders to the heirs at law of each such living child, in harmony with the provision already made for the heirs at law of deceased children, but provided that each such child might defeat this gift by interposing a will in which a different disposition might be made. If no child took action under this power, then the will of the testator disposed of the remainder absolutely to the heirs at law. Mrs. Lansing was one of the children of the testator, and Mrs. McVicker was her sole heir at law. The property vested in Mrs. McVicker, as heir at law of Mrs. Lansing, immediately upon the latter's death, unless Mrs. Lansing in her lifetime exercised the power given in her father's will to dispose of the property to her heirs at law and collateral relatives. Mrs. Lansing, by her will, assuming to act under this power, gave the property to Mrs. McVicker, who was already entitled to it under her grandfather's will unless something was done to defeat her rights. "In other words," to quote the language of the court (page 243 of 182 N. Y., page 883

of 74 N. E.), "the attempt to exercise the power neither increased nor diminished the estate of Mrs. McVicker, and did not affect in any degree the value of her grandfather's gift. It did not effectively transfer any property whatever, for she took from her grandfather, and nothing was added to or taken away from the gift by the exercise of the power through the will of her mother."

In the case now before us the testator does not make any absolute disposition of the trust fund to the heirs of his daughter. He provides that:

"At the death of any daughter * * * I order and direct my said trustees to pay over all property, * * * to such person or persons and for such estate and use, and with and under such trusts, powers, * * * as said daughter shall lawfully by her last will and testament direct, create and appoint."

And it is only in the event that "such daughter shall fail to lawfully exercise said power of disposition by her will, or if for any cause a reversion should occur," that they (the trustees) "shall pay the same to the lawful issue of such daughter, in the same manner as if such daughter had died intestate owning the same."

The will of John Davol became operative on his death in 1878. From that time Maria B. Chapman had the absolute power to dispose of, by her will, the trust property. She could make her will at any time, and, if the will was lawful when made, it operated to dispose of the property at her death. The moment she elected to act under this power, that moment the rights of all persons under the eighth clause of her father's will became fixed, subject to her right to revoke her will, or the remote contingency provided for, and so long as that will remained in force—and a will once made is in force until it is canceled or destroyed in the manner provided by law—it had the effect of destroying the provisions of her father's will which provided for paying the fund over to her heirs at law. Those who took after that time took by reason of the exercise of the power, not through a failure on her part to act, and the mere fact that Mrs. Chapman survived until all of her sons had reached the age of 25 years, and thus became entitled to the immediate possession of the property upon her death, and which thus resulted in the same disposition which the grandfather had provided in the event of her failure to act, does not change the legal status of the case in the slightest degree. The heirs at law of Mrs. Chapman do not take under the will of John Davol, for she made use of the power. She made use of the power in a perfectly lawful manner, and she retained the right to make a new will, and a new disposition of the property, right down to the time of her death, and that which was lawful when she acted in 1889 did not become unlawful by the mere fact that the purposes of the trust, by lapse of time, had been fulfilled before her death. In other words, if Mrs. Chapman in 1889 had made her will, providing a trust for John Doe and Richard Roe, under the same terms and conditions, and she had survived the trust limit, would any one have suggested that the provision of John Davol's will, that in the event of her failing to act the property should go to her heirs at law, had any power to vest the estate in such heirs? We

think not. The condition which determined the disposition of the estate was made in the will of Mrs. Chapman, under the power contained in her father's will. By the terms of that will she vested the legal title to the property in her executors, as trustees, for the purpose of accomplishing certain results, and she gave the property to her heirs at law, subject to the fulfillment of these trusts. She might have disposed of the property otherwise; but she elected to make a provision for her children until they should become of proper age to take care of the property, and they having arrived at that age before her death, and with this power exercised and unrevoked, her heirs at law take under the provisions of her will, and they are thus brought within the letter of the statute and its spirit, as well as within the authority of the leading cases; the Matter of Lansing, supra, being decided upon its own peculiar facts. See Matter of Vanderbilt, 163 N. Y. 597, 57 N. E. 1127; Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508; Matter of Rogers, 172 N. Y. 617, 64 N. E. 1125; Matter of Delano, 176 N. Y. 486, 68 N. E. 871, 64 L. R. A. 279; Matter of Cooksey, 182 N. Y. 92, 74 N. E. 880.

It is suggested, however, that under John Davol's will there is a provision for Laura Davol, his wife, and a further trust in this same property for testator's children, and that the act of Mrs. Chapman, under the power given in her father's will, is to continue the trust beyond the period fixed by statute for the alienation of property, and that it was only in the event of Mrs. Chapman making a lawful disposition of the property that it should avail. We are of opinion that this point is without force, from the fact that the power of disposition in the will operates to terminate the trust created by the will of the father. The statute does not attempt to prevent the same property being continued as a trust fund. It simply provides that this shall not be done under any one will. The testator is not permitted to tie up the estate beyond a given time; but when the testator has provided a trust to continue during two lives in being, and has then provided for the absolute disposition of such property by providing that it shall be paid over to "such person or persons * * * as said daughter shall lawfully by her last will and testament direct, create and appoint," the law is satisfied. Mrs. Chapman did direct that this property should be paid over to her executors and trustees. This vested the legal title in them, and then she provided for four trusts, to terminate upon each of the beneficiaries reaching the age of 25 years, an estate for less than one life. Clearly there is nothing unlawful in this. The trust, as established by her will, was perfectly lawful, and so long as that lawful act remained the power given under her father's will was executed, and no rights to the trust estate could descend except through her will. The property is therefore subject to the transfer tax.

The order appealed from should be reversed, and the order of the Surrogate's Court, imposing the tax, should be reinstated.

MILLER, J., concurs.