or on any excuse, and at least attorneys, who are officers of the court to aid it in the administration of justice, must keep themselves clear of any connection which in the slightest degree tends to induce witnesses to testify in favor of their clients. The action of the respondent in controlling and managing a system which had a direct tendency to accomplish that purpose is one that we cannot too severely condemn. Attorneys, whether representing corporations or individuals, must clearly understand that any conduct which tends to participate in or approve the payment of money to witnesses or public officials to influence the administration of justice will be most severely condemned and considered a case for disbarment.

The respondent is not a young attorney, whose youth and inexperience would justify an inference that he did not understand or appreciate the necessary consequences of his acts. He was admitted to the bar in 1882, and thereafter was associated with well-known and reputable attorneys. He had defended various street railroad companies until 1893, when he was appointed attorney for certain street railroads, which were subsequently consolidated into the Metropolitan Street Railroad Company. Whether the respondent devised the objectionable method of meeting accident claims, or inherited and developed it, is immaterial. In either case he was equally culpable. When the respondent took charge of the affairs of the Metropolitan Street Railroad Company as the head of its legal department, and thereafter conducted the legal affairs for that company, he was under no obligation to continue or develop a system the tendency of which would be to subvert the administration of the law and directly tend to subornation of perjury. We cannot possibly justify conduct of this kind in an officer of the court, and it becomes our imperative duty to say that any attorney who takes part in such conduct should no longer continue a member of the profession.

The respondent is therefore disbarred. All concur.

---

## In re HAIGHT'S ESTATE.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. DEEDS (§ 133*)—REMAINDERS—CREATION.

A person conveyed real and personal property to trustees for her use during life, and, on her death, to be conveyed to persons to be designated by will, or on intestacy to her issue in equal shares in fee simple, the issue of any child who may have died during the life of the cestui que trust to take the share of the deceased child. Further provisions gave the property to her brothers and sisters on her death intestate without issue. Held, that such brothers and sisters took a vested remainder subject to be divested by the birth of issue, and, on the birth of the oldest child, he took a vested estate in the remainder subject to open and let in after-born children, but subject to be defeated by the death of either during her lifetime or by the execution of a will conflicting with the trust deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 368–371; Dec. Dig. § 133.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TAXATION (§ 861*)—TRANSFER TAXES—PRIOR TAXES.
    Where, by the terms of a transfer to trustees, the oldest child of the
    transferee obtained a vested estate in remainder in the property which
    was never divested by methods reserved, and was subject to be opened to
    let in after-born children, the youngest of which was born prior to the
    enactment of the earliest transfer tax law, the assessment of an in-
    heritance tax against such estate was improper.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1676; Dec. Dig.
    § 861.*]

3. WILLS (§ 480*)—EFFECT—PROPERTY ALREADY DISPOSED OF BY DEED.
    Where a will made the same disposal of property held by trustees as
    was provided for by the trust deed in case of intestacy, it would not
    affect a vested estate in remainder created by the deed, and the remain-
    dermen's interest passed under the deed rather than the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1004; Dec. Dig.
    § 480.*]

Appeal from Surrogate's Court, Putnam County.

Proceedings for the appraisal of the property of Euphemia K.
Haight for assessment of an inheritance tax. From an order of the
Surrogate's Court of Putnam county (136 N. Y. Supp. 952), the State
Comptroller appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, WOOD-
WARD, and RICH, JJ.

William Law Stout, of New York City, for appellant.

Francis C. Huntington, of New York City (David B. Ogden, on
the brief), for respondent.

BURR, J. [1] On September 18, 1865, Effie (sometimes called
Euphemia) Kneeland, who subsequently married Charles C. Haight,
executed a deed by which she conveyed to Charles Kneeland and
William A. McVickar, their survivor or successors, all her estate, real
and personal, upon trust, to collect and receive the rents, issues, in-
come, and profits thereof, and apply the same to her use during her
life. Upon her decease, the trustees were instructed to convey and
transfer said estate to such persons in such proportions and for such
estates as she should by her last will and testament devise and bequeath
the same. If she died intestate leaving issue her surviving, the trustees
were instructed to convey and transfer said estate to her "issue in
equal shares in fee simple, the issue of any child * * * who may
have died during the lifetime of said party of the first part to take
the share of such deceased child." There were further provisions in
said deed of trust for the benefit of her brother and sisters if she died
intestate and without issue. Subsequently Euphemia Haight gave birth
to three children, Charles Sidney Haight, Sarah B. Haight, and John
McVickar Haight. She had no other children. The youngest of these
was born in 1882, and prior to the enactment of the earliest statute
of this state relating to taxable transfers. Euphemia Haight died Oc-
tober 26, 1909, leaving her surviving the three children above named.
She left a will dated February 13, 1909, and subsequently proved be-

fore the Surrogate's Court of Putnam county, which contained the following provision:

"First: I give, devise and bequeath all my property, real and personal, of what kind so ever and wheresoever situated, including all property over which I have any power of appointment, to my children, Sarah B. Haight, Charles Sidney Haight and John McVickar Haight, in equal shares. If any of my said children shall die before me either with or without issue, the share which the child so dying would have taken if living at my death, shall be divided equally amongst such of my said children as shall survive me."

[2] The question presented by this appeal is whether the estate received by her three children is subject to a transfer tax. The Comptroller of the state appeals from an order declaring it to be exempt. We think that the learned surrogate decided correctly, and that the order must be affirmed. We are unable to distinguish this case from the cases of In the Matter of Chapman, 133 App. Div. 337, 117 N. Y. Supp. 679; affirmed, 196 N. Y. 561, 90 N. E. 1157, and In the Matter of Haggerty, 128 App. Div. 479, 112 N. Y. Supp. 1017; affirmed 194 N. Y. 550, 87 N. E. 1120, nor does the learned counsel for the appellant in his able and interesting brief attempt to do so. Upon the execution of the trust deed the trustees named therein took an estate during the life of the grantor in all her estate, real and personal, sufficient to feed the trust. The remainder then vested in her brother and sisters then living, subject however, to be divested by the birth of her issue. In re Haggerty, supra. Upon the birth of her oldest child, he took a vested estate in this remainder, subject to open and let in after-born children, or to be defeated by the death of either during her lifetime (Moore v. Littel, 41 N. Y. 66; Matter of Chapman, supra), and also subject to be defeated by a will executed by her, whose provisions were in conflict with the provisions of the trust deed relating to this vested remainder.

[3] Although Mrs. Haight did not die intestate, for she left a will, so far as this estate in remainder is concerned, her will never became operative, for the attempted execution of the power over the remainder reserved by her in the trust deed left the estate precisely where it was before, and nothing was added to or taken away from the gift under the deed by the exercise of the power through the will. The result is the same as if there had been no power to exercise. In the Matter of Lansing, 182 N. Y. 238, 74 N. E. 882. Herein is the vital distinction between this case and In the Matter of Cooksey, 182 N. Y. 92, 74 N. E. 880, chiefly relied on by appellant. There David Dows by his will created an estate in trust for the life of Linda Dows Cooksey, his daughter, and also created an estate in remainder for the benefit of such of her children, or the issue of such children, as she might by her last will and testament designate and appoint, in such manner and upon such terms as she might legally impose. There was likewise a provision that, if she died intestate, such estate in remainder should go to her surviving children and the issue of her deceased children per stirpes. Linda Dows Cooksey made a will which became operative, under the terms of which this estate in remainder was given to her children, not absolutely, as provided in David Dows' will in case of her intestacy, and at the times designated therein, but upon

entirely different terms and conditions. The exercise of the power by her did alter the terms of the gift, which would have otherwise become operative through her father's will. Necessarily the transfer became effective through her will, and not otherwise.

The order of the Surrogate's Court of Putnam county should be affirmed, with $10 costs and disbursements. All concur, except JENKS, P. J. not voting.