(Surrogate's Court, Westchester County. February, 1913.)

1. TAXATION (§ 895*)—TRANSFER TAX—DEDUCTION OF EXPENSES.
    Where an appraiser fixes the amount of a transfer tax by deducting merely the amount actually expended for administration expenses in another state, without deducting the expense for future administration as estimated by the surrogate, his decree will be modified by deducting for this further expense.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

2. WILLS (§ 616*)—CONSTRUCTION—ESTATES DEVISED—LIFE ESTATE—POWER OF BENEFICIAL DISPOSITION.
    Where testator devised half of his estate to his daughter for life, with power to invest and reinvest, and to dispose by sale or otherwise of any part, with remainder over at the daughter's death of so much as then remained, the daughter took a life estate, with power to dispose of the property and to use the proceeds.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1418–1430; Dec. Dig. § 616.*]

3. TAXATION (§ 885*)—TRANSFER TAX.
    Testator gave his daughter a life estate in one-half of his residuary estate with power to dispose of same, and at her death so much of her share as then remained was to pass to her surviving issue, or if she left no issue, to testator's brother and sisters in equal shares. Held, that the remainder interest was not taxable until the death of the daughter, when the clear market value could be ascertained.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1706, 1707; Dec. Dig. § 885.*]

In the matter of the appraisal of the estate of Horace Granfield, deceased, under the acts in relation to taxable transfers of property.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

From the assessment made and an order confirming the appraisal and fixing a transfer tax, Olive L. Granfield appeals.    Modified.

Johnson & Mills, of Mt. Vernon, for appellant.
John J. Sinnott, of North Tarrytown, for comptroller.

SAWYER, S.    There are two questions raised by this appeal. First.    The appellant claims that an error was made in allowing to be deducted as expenses of administration in Colorado only the sum of $2,815.31, instead of allowing the full amount asked for of $5,000.    Second.    That an error was made in the assessment of the remainder interest in the one-half of the residuary estate devised and bequeathed under subdivision 2 of paragraph 2 of the will of the decedent at the rate of 5 per cent. the appellant claiming that the remainder interest should not have been taxed at all until the death of the life tenant, or, even if it were taxed, that the remainder interest should only be taxed at the rate of 1 or 2 per cent.

[1] As to the first question:    It is apparent that the appraiser has allowed all the amount actually expended for administration expenses in the state of Colorado, namely, the sum of $2,815.31.    In deciding this question it will be necessary to take into consideration the fact that former Surrogate Millard on December 27, 1912, signed a decree discharging the executrix from all further responsibility, etc., in the estate of Horace Granfield, deceased.

Section 3 of the accounting upon which the final decree was based sets forth the following:

"No personal property not mentioned in said inventory has come into my possession or to my knowledge, except I have ascertained that the said decedent had a cash deposit of $3,866.75 with his attorney, Horace N. Hawkins, of Denver, Colorado, to cover possible expenses in litigation, in which Mr. Hawkins was representing him.    The said Horace N. Hawkins has also represented me in certain proceedings and has rendered to me a receipted bill for services and disbursements rendered by him to the decedent and to me as executrix aggregating $2,049.16.    There remain certain matters to be attended to in relation to the estate in Colorado, including the assessment and payment of the inheritance tax, which will consume the balance of said amount which I have left with Mr. Hawkins."

It is evident that Judge Millard, in signing the decree, considered the fact that $3,866.75 had been deposited with the attorney, Horace N. Hawkins, of Denver, Colo., to cover possible expenses in litigation. and that he assumed that the charges for the same were reasonable. The amount which was actually paid to said Horace N. Hawkins was $2,049.16.    This amount was allowed by the transfer tax appraiser, plus $766.15 to the public administrator of Colorado, agreeable to the provisions of schedule C of the accounting.    There would be a balance of $1,817.59 still in the hands of the said Horace N. Hawkins to cover the services which were to be performed in relation to the said estate in Colorado, including the assessment and payment of the inheritance tax and the expense of the final accounting.

As the executrix has been discharged and the accounting settled, I see no reason why I should in any way change the amount of the expense, part of which has been paid and part of which was estimated, as set forth in the accounting.    The appraiser should modify his de-

cree by deducting the expenses of administration as estimated by Surrogate Millard in the decree, amounting in all to the sum of $4,632.90.

The expenses of administration were without doubt a proper item for deduction in this proceeding. There is no doubt that the surrogate or appraiser has the right to estimate a portion of the expense of such administration. Matter of Westurn, 152 N. Y. 100, 46 N. E. 315; Matter of Gould, 19 App. Div. 352, 46 N. Y. Supp. 506.

In Matter of Gould the court held as follows:

"The expenses of administration were, without doubt, a proper item for deduction in this proceeding. The only question is whether the amount of such expenses could be arrived at by estimating the same in part, as was done in this instance. The evidence given before the appraiser was that $75,000 had already been expended, and that $75,000 more would be expended in the administration of the estate. It has for many years been the practice in the city of New York to arrive at the amount of the expenses of the administration to be deducted in these proceedings in this manner, and we see no objection to it."

The appraiser should modify his decree accordingly.

[2] As to the second question: The testator by his will, after making certain specific bequests, makes the following bequest under paragraph "Second":

"Second. All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath as follows:

"(1) One equal one-half thereof to my wife, Minnie O. Granfield;

"(2) One equal one-half thereof to my daughter, Olive L. Granfield, for and during her natural life, with full power to my said daughter to invest and reinvest the same as she may see fit and to dispose, by sale or otherwise, of such portions thereof as she may deem necessary and to make, execute and deliver good and sufficient deeds, mortgages, leases, and other instruments affecting any real estate which may form a portion of her said share of my estate. On my daughter's death I give, devise and bequeath said one-half of my estate, or so much thereof as shall then remain, to her issue, if any survive her, in equal shares, and if no issue survive her then in equal shares to my brother, Walter Granfield, and my sisters, Emily Crawford and Nellie Granfield."

The appellant contends that these provisions give the daughter, Olive L. Granfield, a life estate with the absolute beneficial power of disposition of the principal during her lifetime, with the remainder over of such part as she may not dispose of to the persons named, and that the order assessing the tax, in so far as it assesses a tax upon the remainder interest value at $11,703, by the appraiser should be vacated and set aside, and an order should be entered postponing the taxation of said remainder interest until such time as the clear market value can be ascertained and determined.

The question presented involves a construction of the will of Horace Granfield, deceased. Does the clause give to Olive L. Granfield a life estate, and does it give her power of disposition of the property during her lifetime? The testator gave his daughter, Olive L. Granfield, power to dispose by sale or otherwise of such portions thereof as she might deem necessary. In the next sentence he states on his daughter's death:

"I give, devise and bequeath said one-half of my estate, *or so much thereof as shall then remain. * * *"

This shows very clearly that he had in contemplation, not only the giving of a life estate to his daughter, but also power to dispose of the principal of the estate in case she should so desire. Mitchell v. Van Allen, 75 App. Div. 297, 78 N. Y. Supp. 149; Seaward v. Davis, 198 N. Y. 415, 91 N. E. 1107; Matter of Comer, 72 Misc. Rep. 321, 131 N. Y. Supp. 187; Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950; Kendall v. Case, 84 Hun, 124, 32 N. Y. Supp. 553; Thomas v. Wolford, 49 Hun, 145, 1 N. Y. Supp. 610.

In the case of Mitchell v. Van Allen, the will of the testator provided as follows:

"First. After my lawful debts are paid I give and bequeath to my well beloved wife, Julia L. Mitchell, all of my real estate and personal property of which I may be possessed at the time of my death, for her own personal use and benefit during her natural life and at her death all that may remain and be left is to go to our daughter Mary E. Crawford, wife of John E. Crawford, and in the event of her death (should it occur before the death of her mother) then it shall be for the sole use and benefit of my grandson, George Mitchell Crawford."

The court held that the language of the will indicated the intention of the testator to give his widow not only a life estate in the land, but power of disposition and use of the proceeds.

Leggett v. Firth seems to be conclusive authority upon the construction of the clause in question. The will in that case contained a provision that, if the personalty was insufficient to pay the legacies, enough real estate should be sold for that purpose, followed by the clause:

"I also give, devise and bequeath to my wife all the rest and residue of my real estate but on her decease the remainder thereof, if any, I give and devise to my said children or their heirs respectively, to be divided in equal shares between them."

The court said:

"'The remainder, if any,' means the same as 'if there shall be any remainder,' and the gift over is of what may be left. As it would all be left unless there was a right to dispose of it, it follows by necessary implication that he intended his wife should have that power. Otherwise the words 'if any' must be rejected as having no meaning whatever."

In the Kendall Case the will contained a clause reading:

"I give, devise and bequeath to my beloved wife, Polly, the control, use and incomes of all my property, both real and personal, of every nature, for her own benefit, so long as she lives, and after the death of my wife, Polly, and after the payment of the funeral charges and erection of suitable tombstones, if any of said real or personal property is left, I order my executor to divide said remainder, share and share alike, and to pay my said children or heirs as follows."

It was held that the widow had the life estate with power to dispose of the corpus of the estate.

In Thomas v. Wolford, the language of the will was:

"After all my lawful debts are paid and discharged I give and bequeath to my wife Eliza J. Thomas, all of my real and personal estate, that I may die possessed of, during her lifetime, and at my wife's death the property, should there be any left, to be divided among the children or their heirs."

The court held that during life the widow had the power of disposition of the estate, the power to consume and dispose of it as might be-

come. expedient and necessary to secure its beneficial enjoyment, and upon her death such estate as had not been consumed by her was devised to the children.

In the case of Seward v. Davis, the third clause of the will was as follows:

"I give and bequeath all my personal property of every name and kind to my wife, except my piano, which I give to Lillie Corwin aforesaid. Whatever personal estate may remain at the decease of my wife I give and bequeath to Briel Davis and Abigail Davis, the parents of my wife, or if they are not living, then to my sisters aforesaid and Lillie Corwin, share and share alike."

The court, Chief Justice Cullen writing the opinion, at page 419 of 198 N. Y., at page 1108 of 91 N. E., stated as follows:

"On the merits, we are of opinion that the will of William Z. King was properly construed by the Appellate Division on the first appeal in this case. Tuthill v. Davis, 121 App. Div. 290 [105 N. Y. Supp. 672]. That is to say, its effect was to give the widow a life estate with the absolute power of disposition during her lifetime, with a remainder over of such part as she might not dispose of to the persons named in the will [citing Terry v. Wiggins, 47 N. Y. 512; Crozier v. Bray, 120 N. Y. 366, 24 N. E. 712; Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950]. * * * In this case, however, the widow had the right to dispose of the property in her lifetime; and, as to such property as she did dispose of, neither she nor her executor was bound to account to the remaindermen because they had no interest in it. If none of the husband's property remained at the time of the widow's death, or could be found at that time, as stated by the defendant, it is evident that the widow had disposed of it. * * * We are therefore of opinion that the burden rested on the plaintiff to show that some part of the husband's estate passed to the defendant or was in his possession, and the modification of the interlocutory judgment made by the Appellate Division was correct."

Upon the authority cited I am of the opinion that the language of the will indicates the intention of the testator to give his daughter not only a life estate in the corpus of the estate but power of disposition and the use of the proceeds. Any other construction would ignore the words:

"To dispose by sale or otherwise of such portions thereof as she may deem necessary, * * *" and "On my daughter's death I give, devise and bequeath said one-half of my estate or so much thereof as shall then remain. * * *"

[3] After this construction of the will, the question then presented is: Should any tax be assessed and collected at the present time upon the interest given by this will to the remaindermen in view of the fact that the testator gave to his daughter, not only a life estate in the land, but power of disposition and the use of the proceeds.

The attorney for the comptroller contends that the interest given by the will of the testator in the second clause should be immediately appraised and assessed and the tax paid under the following clause of section 230 as amended by chapter 368 of the Laws of 1905:

"When property is transferred in trust or otherwise and the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forwith by the executor or trustee out of the property transferred."

Section 222 of the same law provides that:

"All taxes imposed by this article shall be due and payable at the time of the transfer, except as hereinafter otherwise provided. Taxes upon the transfer of any estate, property or interest therein, limited, conditioned, dependent or determinable upon the happening of any contingency or future event, by reason of which the fair market value thereof cannot be ascertained at the time of the transfer as herein provided, shall accrue and be due and payable when the persons or corporations then beneficially entitled thereto shall come into actual possession or enjoyment thereof."

In this case the clear market value of the property transferred cannot be ascertained until the death of Olive L. Granfield. To tax the estate at the present time, in the event nothing should ultimately pass to the remaindermen, would be imposing a tax upon the property, and not upon the transfer, in direct conflict with the whole theory of the transfer tax.

Matter of Babcock, 37 Misc. Rep. 445, 75 N. Y. Supp. 926, affirmed 81 App. Div. 645, 81 N. Y. Supp. 1117, seems to be directly in point with the case at bar. Surrogate Grant in writing the opinion, and after considering sections 230 and 222 of the Tax Law (being Laws of 1899, c. 76) at page 447 of 37 Misc. Rep. at page 928 of 75 N. Y. Supp., states as follows:

"The language of the amendment relied upon by the respondent [meaning section 230], 'and such tax shall be due and payable forthwith out of the property transferred' does not necessarily mean that the property transferred shall be immediately appraised and assessed in cases where the clear market value cannot be ascertained and determined. Nor does it mean that the tax shall be due and payable forthwith 'out of the property transferred,' before the property transferred is appraised and the amount of the tax ascertained and determined. In this case the clear market value of the property transferred cannot be ascertained until the death of William E. Brown. To tax the estate at the present time would be, in the event nothing should ultimately pass to the remaindermen, imposing a tax upon the property and not upon the transfer, in direct conflict with the whole theory of the transfer tax."

The question considered in the Babcock Case was pursuant to chapter 76 of the Laws of 1899. The portions of sections 230 and 222 as cited above are exactly the same as sections 230 and 222 as amended by chapter 368 of the Laws of 1905.

I have carefully considered section 230 of the Tax Law, as amended by chapter 368 of the Laws of 1905 which applies to the case at bar, and I find nothing which indicates any intention to repeal, by implication or otherwise, section 222 of the Tax Law respecting the appraisement of this class of conditional transfers. Surely the fair market value of the remainder cannot be ascertained until the death of the life tenant, at which time the remaindermen, being the parties beneficially entitled thereto, will come into the actual possession or enjoyment of what may be left of the corpus of the estate. If section 222 means anything, it must mean that in a case of this kind the taxing of the remainder interest should be postponed until such time as a clear market value can be established and determined. The clear market value can only be established and determined at the death of the life tenant.

The testator died on May 7, 1911. The rate of taxation, therefore, is determined by the provisions of section 220 and 221 of the Tax Law,

as they existed at the time of the death of the decedent and as the same were amended by chapter 600 of the Laws of 1910 and chapter 706 of the Laws of 1910.

Under the provisions of section 221 of the Tax Law, the persons subject to "primary rates" and to multiples thereof, depending upon the amounts involved, are father, mother, husband, wife, child, brother, sister, or any lineal descendant and the rates are 1 per cent. upon an amount of transfer not exceeding $25,000 and 2 per cent. upon an amount in excess of $25,000, but not exceeding $100,000. The attorney for the comptroller concedes that the highest rate possible in the case at bar is 2 per. cent. This seems to be the proper view of the matter. In no case could the rate be 5 per cent. and whether the rate is 1 per cent. or 2 per cent. depends upon the amount of the remainder interest transferred. If the same is under $25,000, the rate will be 1 per cent., and, if over $25,000, the rate will be 2 per cent.

As to the second question raised by the appeal, an order may be entered vacating and setting aside the order assessing the tax herein in so far as the same may affect the remainder interest, and the time for appraising and assessing the tax upon the said interest transferred by the will of Horace Granfield may be postponed until the death of the life tenant when the clear market value can be ascertained and determined.

Decreed accordingly.