claim that the automobile was not included in the business was not credited. The court charged the jury:

"That even if the defendant owned it there was no liability, unless the owner at the time of the collision was engaged in defendant's business."

The Court of Appeals recognized the charge as proper. The form of the pleadings was not mentioned. That case, therefore, in no way controls this case, which is strictly one of pleading and not of evidence.

A complaint should contain a plain and concise statement of the facts, and it is an elementary rule of pleading that evidence is not to be alleged. Whether Bressette is or is not liable does not appear from the complaint; proof of his ownership upon the trial would be some evidence of control. The ownership creates no liability; the control is the important thing. Falconberg was controlling the car. If he was controlling it as agent for Bressette, that fact should have been alleged. Conceding everything alleged in the complaint, it cannot be said that Bressette is necessarily liable. He may and he may not be liable; that fact cannot be ascertained until the evidence is in. A complaint should allege the necessary facts in such a manner that, if every allegation in it is true, liability necessarily follows. It is common experience that a car, as well as all other kinds of personal property, is not always controlled by or for the owner. It may be leased, loaned, or taken; many conditions may arise, where the mere fact of ownership is entirely immaterial in fixing a liability for the negligent control of the car. It was easy to allege, if true, that Falconberg was the servant of Bressette, or that Bressette controlled the car through him. Evidently the pleader had in mind that the owner of the car, on account of the ownership, was liable, without regard to the circumstances of its operation. The essential fact to be alleged was the negligent control by Bressette through Falconberg; that allegation is wanting.

The demurrer was properly sustained.

(91 Misc. Rep. 203)

### In re VALENTINE'S ESTATE.

(Surrogate's Court, Bronx County. June, 1915.)

1. TAXATION ☞900—TRANSFER TAX—VALUATION—REVIEW BY COURT.
    Where the testimony heard by the transfer tax appraiser on behalf of the state comptroller tended to show that the estate was worth $70,600, and the testimony on behalf of the adverse parties tended to show that it was worth $61,000, a valuation of the estate at $68,000 could not be disturbed by the court.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1722, 1723; Dec. Dig. ☞900.]

2. TAXATION ☞895—TRANSFER TAX—TRUST ESTATE—DATE OF FIXING TAX.
    A decedent, by instruments executed before her death, conveyed all her property in trust to apply the income to her use for life, and, if necessary in the opinion of the trustees, to similarly apply the principal, and on her death to convert the remaining realty into cash, to be deemed personalty, and to pay same, together with the proceeds from a sale of

the remaining personalty, as might be provided in her will, or as provided by law in case of intestacy. The trust further provided that, if it appeared to the trustees on her death that the share of any legatee or next of kin was subject to seizure by judgment or execution, such share should be held in trust, and the income and such part of the principal as the trustees might deem necessary be applied to the support of such next of kin until exhaustion of the fund or disappearance of the danger of seizure, in which event the balance thereof was to be paid to the next of kin or to his issue per stirpes. *Held* that, settlor having died intestate, the tax as to those of the next of kin whose shares were not subject to seizure must be fixed under the law existing at the settlor's death, they taking under the statute, and not under the trust instrument, and that as to those of the next of kin whose shares were subject to seizure the tax should be fixed under the law existing when the trust instruments were executed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☞895.]

In the matter of the transfer tax upon the estate of Maria A. Valentine, deceased. From an order fixing transfer tax, trustees of the estate appeal. Reversed, and matter remitted to appraiser.

Abel Crook, of New York City, for appellant trustees.

Salter & Steinkamp, of New York City, for appellant Briggs.

Tulin, Dunham & Sisson, of New York City, for appellants Cable and others.

John Boyle, Jr., of New York City, for respondent.

SCHULZ, S. Maria A. Valentine died April 2, 1913. On the 7th day of January, 1909, she executed and delivered an instrument granting, conveying, assigning, releasing, transferring, and setting over unto two persons therein named all of her property, real and personal, and on the same day she executed a deed of all her real property to the same persons; both instruments being upon the trusts hereinafter stated. The transfer tax appraiser, in appraising her property, did so under the law relating to taxable transfers of property as it existed on the 7th day of January, 1909, the date of the documents above referred to. The trustees have appealed from the appraisal and from the order which was entered thereon assessing the tax.

[1] The appellants claim that the appraiser erred in fixing the value of certain property owned by the decedent, consisting of a parcel of real estate in the county of Bronx, city of New York, and in assessing the tax under the law as it existed at the time of the execution and delivery of the instrument aforesaid; their claim being that the said tax should have been assessed under the laws in force on the date of the decedent's death. The appraiser heard testimony submitted on behalf of the state comptroller and on behalf of the appellants as to the value of the parcel of real estate above mentioned. The assessed valuation of this property for purposes of taxation was $58,000. The testimony on behalf of the appellants was that it was worth $61,000, and that on behalf of the comptroller was that its value was $70,600. The appraiser found it to be worth $68,000. I do not feel that I would be justified upon the testimony in this proceeding in concluding that his appraisal was not fair, and I accordingly sustain

his valuation of the said real property.   Matter of Valentine, 163 App. Div. 843, 147 N. Y. Supp. 1146.

[2] In considering the second question raised on the appeal, it becomes necessary to examine the trust instruments executed by the decedent on the 7th day of January, 1909.   As the deed heretofore referred to embraces only real property, and contains provisions substantially the same as the other trust instrument, and as the latter refers to all of the property, both real and personal, unnecessary duplication will be avoided by considering only the trust instrument last mentioned.   That part of the document in question which contains the trust provision, so far as material, is as follows:

"To have and to hold the above granted premises. * * * In trust, nevertheless, to collect the income from such real and personal property * * * and to apply the net income derived therefrom to the use of the party of the first part [the settlor] during the term of her life, and if in the opinion of the parties of the second part [the trustees], their survivor, successor, or successors, such income shall be insufficient for the proper maintenance of the party of the first part, then the parties of the second part, their survivor, * * * shall be at liberty to apply any portion of the principal of the personalty or the proceeds of any sale of the real estate to such purpose without liability. * * *"

As to the disposition which shall be made after the death of the decedent, the document provides that:

"Upon the death of the party of the first part, the parties of the second part * * * shall sell * * * my said real estate, or so much thereof as shall not have been theretofore sold, and convert the same into cash, to be deemed personalty, and pay over the same to such persons and in such proportions as shall be provided in my last will and testament, or otherwise as shall be provided by the laws of the state of New York in force at the time of my death for the distribution of estates in case of intestacy, and shall also sell * * * all my personal property and add the net proceeds arising from said sales to the balance of the moneys in bank to be distributed as above provided relative to the proceeds of real estate. * * * If upon the death intestate of the party of the first part it shall appear to the satisfaction of the parties of the second part, their survivor, * * * that the share then to be set apart and which would be distributable to any of my legatees or next of kin shall be in danger of being levied upon, seized, * * * or otherwise interfered with under any judgment, claim, execution, * * * then such shares shall be held by the parties of the second part * * * in trust, and deposited or invested at interest in such banks * * * as to the parties of the second part * * * may seem best, and the income arising therefrom, together with such portion of the principal * * * as the parties of the second part * * * may deem necessary * * * for the maintenance and support of said beneficiary shall be applied to the use of such beneficiary during his or her life, or until such share becomes exhausted, or until it shall appear * * * that such danger has been removed, and thereupon the principal of such share shall be paid to said legatee or next of kin entitled thereto.   Any portion of his or her share not paid during the life of such legatee or next of kin upon his or her death shall belong to his or her issue, per stirpes and not per capita."

The appellants contend that Matter of Hawes, 162 App. Div. 173, 147 N. Y. Supp. 329, is controlling on this appeal.   In that matter a trust deed similar in many respects to the one under consideration was before the court.   It provided that at the death of the settlor, if he died without making a contrary direction in his will, the trustees were to pay, distribute, and convey what then remained of the trust

property according to the statute regulating the descent and distribution of intestate estates. Under this language the court stated that the most that could be claimed for the deed of trust was that it designated by description as the person to whom the property was to be paid over the same person who would have taken it under the statute of distributions, if no designation had been made in the deed of trust, and the decedent had died intestate, and that in such case the next of kin must be held to take under the statute of distributions, and not under the deed of trust or the apportionment contained therein; and it was upon that view of the matter that the court decided that the tax should be assessed and fixed under the law as it existed at the time of the death of the settlor, and not at the date of the trust instrument.

In the document now under consideration, however, it will be noted that, after providing for the distribution of her property in case she left no will to the persons and in the shares provided by law for distribution in case of intestacy, the settlor added a trust provision with reference to the shares of such of the next of kin as might be in danger of seizure. Hence the distribution is the same as that which would take place under the statute, except as to those shares, if any, which might be in danger of seizure. If, therefore, the reasoning in Matter of Hawes be followed, namely, that preference is given to distribution under the statute, the beneficiaries who take in the same way as they would have taken under the statute must be held to take under the statute, unless the fact that the decedent added a provision with reference to the shares of beneficiaries which were liable to seizure prevents the application of the principle enunciated in Matter of Hawes.

In Matter of Chapman, 133 App. Div. 337, 117 N. Y. Supp. 679 (appeal dismissed 196 N. Y. 561, 90 N. E. 1157, no opinion), the facts were as follows: One John Davol died in 1878, leaving a last will and testament dated November 21, 1874. By this will he gave to his trustees a share of his estate in trust for the benefit of his daughter, Maria B. Chapman, during her life, and provided that at her death the trustees were to pay over the same to such person or persons as said daughter should by her last will and testament direct. In default of an exercise of the power of disposition given her, the trustees were to pay the same to the lawful issue of such daughter in the same manner as if such daughter had died intestate owning the same. The daughter, by her last will and testament and a codicil thereto, gave and devised this share of her father's estate to her sons in the same shares that they would have received under the will of their grandfather, if their mother had died intestate. She added a provision, however, that one of these shares should be held in trust for each of her sons until they attained the age of 25 years. All of her sons were more than 25 years of age at the time she died. The question was whether the sons took under their grandfather's will or their mother's will. The court held that, notwithstanding the fact that she had made a disposition of her property which would have been different from that made by the will of her father if her sons had been under

the age of 25 years, the fact that they were over the age of 25 years at the time of her death made this disposition the same as that which had been made by her father's will.

Applying this reasoning to the case under consideration, it would follow that, notwithstanding the fact that provisions are made for possible trusts if the circumstances authorizing the same did not exist at the time of the death of the decedent, the beneficiaries as to whose shares they did not exist take in the same way as they would have taken in case of intestacy. In this event the decision in Matter of Hawes, in my opinion, applies, and is controlling. I accordingly hold that, as to the shares which the trustees have paid or will pay over direct to the beneficiaries as provided by the trust instrument, the tax must be fixed under the law as it existed at the time of the death of the settlor.

We come, then, to a consideration of the shares of those beneficiaries, if any, which are liable to seizure. The tax in question is not a property tax, but a tax upon a particular method of acquiring property. Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782; Matter of Keeney, 194 N. Y. 281, 87 N. E. 428; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. It is a tax or charge upon the transfer of property (Matter of Ramsdill, 190 N. Y. 492, 83 N. E. 584, 18 L. R. A. [N. S.] 946; Matter of Dows, 167 N. Y. 277, 231, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508; Matter of Gihon, 169 N. Y. 443, 62 N. E. 561; Matter of White, 208 N. Y. 64, 101 N. E. 793, 46 L. R. A. [N. S.] 714, Ann. Cas. 1914D, 75), and by the transfer of property is not meant necessarily the physical transfer, but the right to receive the property, even though its actual possession and enjoyment may be postponed (Matter of Webber, 151 App. Div. 539, 136 N. Y. Supp. 83).

The decedent by the language employed in the document designated her next of kin as the objects of her bounty. It is true that at the date of execution of the same the persons who would be in that class were uncertain, for the reason that the settlor had provided that the laws in force at the date of her death should govern in their determination, and this would have been so, even if there had been no provision to that effect, for a living person can have no next of kin. Whittemore v. Equitable Trust Co., 162 App. Div. 607, 147 N. Y. Supp. 1058; Robinson v. New York Life Ins. & Trust Co., 75 Misc. Rep. 361, 133 N. Y. Supp. 257. The amount transferred was also uncertain, because the decedent might use, not only the income, but also the principal, of the trust fund under certain conditions. The latter contingency, however, is provided for by the statute; section 222 of the Tax Law (Consol. Laws, c. 60), as far as material, being as follows:

"* * * Taxes upon the transfer of any * * * property * * * limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof cannot be ascertained at the time of the transfer, * * * shall accrue and become due and payable when the persons * * * beneficially entitled thereto shall come into actual possession or enjoyment thereof." '

As the settlor reserved to herself a possible use of the principal, the fair market value of the property which was transferred cannot be fixed until the death of the settlor, and, as such a condition is recognized and provided for in the law, it must follow that its existence in any given case does not interfere with the transfer which, under the statute, is taxable; the market value being ascertained at the time of the death of the settlor, and the rate of taxation being governed by the provisions of the statute in force at the time of the transfer. Matter of Granfield, 79 Misc. Rep. 374, 140 N. Y. Supp. 922.

There then remains only the uncertainty as to the beneficiaries with reference to the shares now under discussion, and if, as contended, this uncertainty prevents the transfer until the death of the decedent, the conclusion which I arrive at as to such shares is wrong. I do not believe, however, that this is the case. The purpose of the direction to pay to the persons who would be entitled to take in case of intestacy was a direction to pay to a class and was sufficient to carry the grant. Matter of Mayo, 76 Misc. Rep. 416, 136 N. Y. Supp. 1066. The death of the settlor fixed the time when the next of kin were to take, but it did not create their right to take in the manner provided for by the trust instrument. The latter fixed three things definitely: (a) That the persons who would take should belong to a certain class; (b) the proportionate share each would receive; and (c) the manner in which he or she would receive it.

The rights, therefore, which accrue to the persons whose shares would be liable to seizure, came to them through and by virtue of the provisions of the trust instrument, when the same was executed and delivered by the settlor to the trustees. The laws in effect when the right of succession became fixed govern. When the beneficiaries actually come into possession of the property is of no consequence. Matter of Webber, 151 App. Div. 539, 136 N. Y. Supp. 83, citing Matter of Swift, 137 N. Y. 77, 88, 32 N. E. 1096, 18 L. R. A. 709; Matter of Haight, 152 App. Div. 228, 136 N. Y. Supp. 557. I therefore conclude that as to the shares liable to seizure, etc., the tax should be fixed under the law as it existed on the date when the trust instrument was executed.

What shares, if any, are liable to seizure is a question of fact. There appears in the record no evidence upon which I can base a finding in that regard, and before the tax on the various shares can be fixed a solution of that question is necessary. I accordingly reverse the order heretofore entered, and remit the matter to the appraiser, to take testimony upon the question indicated and report in accordance with this opinion.

Decreed accordingly.