In the Matter of the Transfer Tax upon the Estate of JOHN G. WENDEL, Deceased.

REBECCA A. D. WENDEL SWOPE and ELLA V. VON E. WENDEL, as Administratrices, etc., of JOHN G. WENDEL, Deceased, and Others, Appellants; COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Second Department, December 21, 1917.

**Wills — construction — vested remainder — tax — transfer tax on transfers by deed in execution of power of appointment.**

Where a testator who died in 1876 devised certain lands to his son for life, with authority to appoint said lands among his issue or his sisters by deed or will, and, in case the son should leave no valid appointment or issue, devised the lands to his sisters, the sisters had a vested interest, which is not subject to a transfer tax.

Transfers by deeds executed three years prior to the death of the grantor in pursuance of a power of appointment in the will of his father who died before any statute in this State imposed an inheritance or transfer tax, are not subject to a transfer tax.

Such transfers, not being dependent on or connected with death, are clearly without the legislative intention, and beyond the purview of the statute.

SEPARATE APPEALS by Rebecca A. D. Wendel Swope and another, as administratrices, and others, from an order of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 17th day of April, 1917, dismissing their appeal from the appraisal of the property of John G. Wendel, deceased, and also from the order of said Surrogate's Court entered therein on the 13th day of March, 1917, fixing the transfer tax herein and affirming a supplemental report of the appraiser, and also from an order of

said Surrogate's Court entered on the 5th day of May, 1916, upon the appeal taken by the said Comptroller from the orders of the surrogate made and entered on the 10th and 24th days of March, 1916, respectively.

*Lewis L. Delafield* [*George Flint Warren, Jr.*, and *Alfred Gregory* with him on the brief], for the appellants.

*Francis A. Winslow*, for the respondent.

PUTNAM, J.:

These appeals question the power to tax transfers by deed in execution of a power of appointment in the will, made in 1875, of the deceased's father, John D. Wendel, who died in 1876 before any statute in this State imposed an inheritance or transfer tax.

John D. Wendel, by paragraph 21 of his will, devised to his son John G. Wendel certain lots in New York, "to have and to hold * * * for and during his life, the rents issues and profits I devote expressly to his own use and benefit, and I authorize him to appoint the said real estate to and amongst his lawful issue or to his sisters or their issue in such share and for such Estates and on such conditions as he may think fit by deed or by Will, and in case he shall leave no such valid·appointment I devise the said lots of land to his lawful issue and if he shall leave no such issue then to his sisters, their heirs and assigns in fee simple forever."

On January 23, 1911, said John G. Wendel conveyed these lands to his sisters in pursuance of this power of appointment, by separate deeds which included also his own life interest therein. They were all dated December 27, 1910, and were together recorded on January 23, 1911. The interests are differently and diversely described in these instruments. The grantees under these deeds entered into possession and thereafter received the income arising therefrom and also paid the taxes thereon. John G. Wendel, the grantor, died on November 30, 1914, intestate, and without issue.

The appraiser first treated these properties as not taxable. The surrogate, however, overruled this view, resulting in a supplemental report. The lands involved were then valued

at $1,525,000. The calculated value of the life estate of John G. Wendel in the six properties was $350,189, leaving as subject to tax, a capital value of $1,174,811.

The sisters of John G. Wendel had a vested interest under the will of 1876, subject to two possibilities, the birth of issue to their brother, and the exercise of this power of appointment by which the lands might be distributed among them differently. As their interest was thus vested, it was not subject to a transfer tax. (*Matter of Pell*, 171 N. Y. 48; *Matter of Chapman*, 133 App. Div. 337; 196 N. Y. 561.)

The Transfer Tax Law, section 220, subdivision 6, provided: " Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this chapter, such appointment when made shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." (Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 220, subd. 6, as amd. by Laws of 1910, chap. 706.)

In 1897 there had been appended to this statute a declaration (following the policy in other States) that property passing through the failure to exercise a power of appointment was nevertheless subjected to transfer tax, the same as if the donee of the power had owned the property, and had devised it by will.* This was held in 1905 to have been ineffective, since " Where there is no transfer there is no tax." (*Matter of Lansing*, 182 N. Y. 247.) Accordingly this provision was repealed. (Laws of 1911, chap. 732, amdg. Tax Law, § 220.)

The Legislature have validly inverted the former rule regarding the source of a title thus coming through the exercise of a power of appointment. It formerly was related back to the original instrument creating the power (*Duke of Marlborough* v. *Lord Godolphin*, 2 Ves. 61, 67; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45, 48); so that transfer taxes were at first based

---

* See Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908), § 220, subd. 5, added by Laws of 1897, chap. 284, as amd. by Laws of 1905, chap. 368, and Laws of 1908, chap. 310; Tax Law of 1909, § 220, subd. 6, as amd. *supra.*— [REP.

on the degree of kinship between the original donor of the power and the final appointees. (*Matter of Stewart*, 131 N. Y. 274.) In 1897 we have the enactment now under consideration, that for the purpose of inheritance taxation, the transfer from the donee of the power should be deemed a transfer, (a) as if the property under the appointment belonged absolutely to the donee of such power, and (b) had been " bequeathed or devised by such donee by will." This was to lay emphasis on the last step in the devolution of interest. It was natural to have in mind powers exercised by will. The draftsman of this amendment considered an appointment exercised by will. Otherwise how could a devise or bequest furnish any standard of comparison? An appointment by deed *inter vivos* goes into immediate effect. Could legislative fiat make such grant by a living person a disposition by will?

General legislation on the subject of the transfer tax has been limited to gifts *causa mortis*, if otherwise the tax would be imposed upon rights of succession which had accrued before the statute came into existence. (*Matter of Seaman*, 147 N. Y. 69.)

Likewise, the language here cannot be taken to place deeds *inter vivos* on the footing of testamentary dispositions, which are taxed for that very reason that they are by will. On such ground appointments under a power have been taxed because by a will, and not effective until the donee's death. (*Orr* v. *Gilman*, 183 U. S. 278; *Matter of Vanderbilt*, 50 App. Div. 246; affd., 163 N. Y. 597; *Matter of Fearing*, 200 id. 340.) If the creation of the power direct that it must be exercised during the donee's life, it cannot be exercised by will. Although a power was given by deed, an appointment by will was subject to tax. (*Matter of Delano*, 176 N. Y. 486; *Chanler* v. *Kelsey*, 205 U. S. 466.) The State's taxing power rests on transfers and successions effective through death. Had these appointments been by deed, but not to take effect till Mr. Wendel should die, they would have been taxable. But where the transfer was by deed taking full effect in the donee's lifetime, the right had been completely exercised, with no element of inheritance. The policy in other States taxing the failure to appoint, under a power, is based on

the view that the failure to act affects the course of the succession, and until such failure is complete the succession is not fully determined. (*Minot* v. *Treasurer & Receiver General*, 207 Mass. 588; *Montague* v. *State*, 163 Wis. 58.) But here .the sucession was complete and absolute on delivery of the deeds, and placed beyond the possibility of change at Wendel's death.    Such transfers, not being dependent on or connected with death, are clearly without the legislative intention, and beyond the purview of this statute.    The question whether the Legislature might lay an excise tax on the creation of a power, as an artificial privilege, and thus subject to the State's control, is not this case, where the only transfers are conveyances in the donee's lifetime.    In *Matter of Keeney* (194 N. Y. 281; affd., *sub nom. Keeney* v. *New York*, 222 U. S. 526) the taxation was on the succession upon Mrs. Keeney's death to a quarter of the income from a trust fund, which had been paid to her during her life.    As this passed upon her death, it came under the State's taxing power.

The legislative purpose, however, must be gathered from the entire system — a method · to levy duties imposed on property changing hands at death.    Whether called death duties, or legacy duties, as in England, or *droits de mutation par déces*\* in France, the principle is to tax the State's grant of a privilege to· succeed to property passing on death. Necessarily this appraisal was made as of the date of the deeds in the lifetime of Mr. Wendel.    Suppose, however, Mr. Wendel had survived his appointments twenty years, instead of three years.    Would the Legislature have imposed on such estate a retroactive tax based on what had long since been alienated, and possibly had passed through many successive hands?    How could the executors be made personally liable for the tax until its payment, as section 224 of the Tax Law provided, over property wholly beyond their control?

In view of these incidents,. there was no basis to set up as a standard of comparison a devise or bequest by will ambulatory and ineffective before the testator's death.

---

    \* See *Matter of Scott; Scott* v. *Scott*, L. R. (1915), 1 Ch. Div. 592.

The execution of this power caused these lands to pass then and there. Death was not the cause nor the occasion of this succession.

Hence I advise that the orders of the Surrogate's Court of Westchester county be modified so as to exclude from the appraisal the six properties appointed by the deceased under the deeds during his lifetime, with costs of this appeal to appellants.

JENKS, P. J., THOMAS, MILLS and BLACKMAR, JJ., concurred.

Orders of the Surrogate's Court of Westchester county modified so as to exclude from the appraisal the six properties appointed by the deceased under the deeds during his lifetime, with costs of this appeal to appellants. Order to be settled on notice.