[S. F. 6761.    Department Two.—December 31, 1915.]

HELEN D. GRAY, Respondent, v. UNION TRUST COMPANY OF SAN FRANCISCO, a Corporation, Appellant.

TRUST—EQUITABLE LIFE ESTATE IN TRUSTOR WITH VESTED REMAINDERS IN HEIRS—DIVESTMENT BY EXERCISE OF POWER OF NOMINATION BY WILL.—A conveyance of property to a trustee, with powers of management, investment and reinvestment, upon the trust that the net income shall be paid to the trustor, and containing the declaration that "this trust shall be irrevocable and shall last during the lifetime of the trustor, and upon her death the trust property shall go to and vest as she shall provide in her last will and testament, and leaving no last will and testament shall go to and vest in her heirs at law according to the laws of succession of the State of California as such laws now exist," does not create a mere dry, naked trust which is terminable upon the option of the trustor. It creates an equitable life estate in the trustor, with equitable remainders vested in the trustor's heirs at law according to the succession laws of California existing at the time of the execution of the conveyance, subject to divestment only upon the exercise of the power of nomination by will reserved to the trustor.

ID.—ABSENCE OF POWER OF REVOCATION—EQUITY CANNOT TERMINATE TRUST.—In the absence of any power of revocation reserved to the trustor by the instrument creating such trust, a court of equity cannot decree a termination of the trust in an action in which the trustor and trustee are the only parties before the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Heller, Powers & Ehrman, Devlin & Devlin, and James L. Robinson, for Appellant.

Edwin L. Forster, and Robert R. Moody, for Respondent.

HENSHAW, J.—Plaintiff, by two instruments of the same date and forming "parts of the same transaction," made by one of them a transfer to defendant, absolute in form, of certain property, real and personal. By the second, contemporaneous therewith, she declared the trusts upon which the defendant, as trustee, was to hold this property. At the time when plaintiff executed the transfer and trust agreement she was, and still is, an unmarried woman over the age of twenty-one years, having no child nor other lineal descendant. Plaintiff's mother, however, is living, and her mother would be entitled to inherit and succeed to all the property, real and personal, of plaintiff if she should die intestate and unmarried, leaving her mother surviving. Plaintiff also has other relatives now living who would be entitled to succeed to and inherit her property if she should survive her mother and thereafter die intestate unmarried, leaving no child surviving her and leaving surviving her the other relatives referred to or any of them. Helen D. Gray subsequently brought this action to terminate the trust, her contention being that notwithstanding she did not reserve in the instruments creating it any power of revocation, nevertheless by virtue of the terms of the trust itself it is determinable at her pleasure. The terms of the trust itself therefore demand presentation.

The conveyance was made to defendant "to manage said trust property as hereinafter provided." The property subject to the trust came to plaintiff through the will of one Mary E. Bithell. The "original investment" of funds received from the estate of Mary Bithell could be made only with the concurrence of the trustor. After this original investment made with the concurrence of the trustor, the trus-

tee is empowered "thereafter from time to time to make investments and reinvestments as in its discretion may seem necessary and proper without consulting the trustor." Certain limitations upon the power of the trustee to make these investments are declared, but they have no bearing upon the question presented on this appeal. "The net income and revenue and profit, less the charge for services of the trustee, shall be paid by said trustee to said trustor," and an accurate account is to be kept. The trustee is entitled to receive for its services two per cent of the gross income of the trust property, and finally the trust instrument declares: "This trust shall be irrevocable and shall last during the lifetime of said trustor, and upon her death the trust property shall go to and vest as she shall provide in her last will and testament, and leaving no last will and testament, said property shall go to and vest in her heirs at law, according to the laws of succession of the State of California as such laws now exist."

The facts were stipulated, the stipulation embracing the matters of fact above set forth. Drawn from these facts the court made additional findings of fact, which are in reality misplaced conclusions of law. The most important of these is as follows:

"That plaintiff is the only person having any interest in any of the real or personal property mentioned in the said assignment or in the said agreement, except said defendant, Union Trust Company of San Francisco, for the compensation which it is entitled to receive for its services as trustee, under the terms of the said trust agreement."

It was under this finding, which manifestly is a conclusion of law embodying the court's construction of the trust and its determination that defendant held but the naked fee, while every beneficial interest in all of the property was vested in plaintiff, that the court concluded that the trust was one which should be dissolved and terminated by its decree, and gave judgment accordingly. From that judgment defendant appeals, and no serious objection can be raised to its right to appeal. Indeed, it is its duty to do so if it believes that there be other persons than Helen Gray whose rights would be impaired or destroyed by the dissolution of this trust. Those persons, if they exist, would be Helen Gray's "heirs at law according to the laws of succession of the State of California as such laws now exist." But those

persons, in the contingency provided for by the trust, would not take as inheritors from Helen D. Gray. The laws of succession as they existed at the time of the creation of the trust would fix the class entitled to take, and that class would take not as heirs of Helen Gray by virtue of her intestacy, but as a class designated in the trust instrument in the event that Helen Gray failed to exercise her power to nominate others. In other words, by a change in the laws of succession conceivably·it could happen that those who would be entitled to take under the trust instrument, in the event of the death intestate of Helen Gray, would no one of them be an heir at law of Helen Gray at the time of her death. And finally upon this proposition, it should be pointed out that upon the death of Helen Gray intestate it would not be the court in probate which would determine to whom the trust property should go. The class entitled to take would be determined by a court of equity in an action brought by the trustee to determine that precise question. The trustee, therefore, owes precisely the same duty to protect the rights of this indeterminable class of beneficiaries as it does to protect the right of the named beneficiary, Helen D. Gray.

The ultimate question then is over the power of the court of equity to terminate such a trust as this. The primary questions first to be determined, and in whose determination the answer to the ultimate question will be·found, go to the nature and scope of the trust itself. What, then, are the nature and scope of the trust? First, there is conveyed to the trustee the whole legal title, since so much is plainly necessary for the purposes of the trust (Civ. Code, sec. 863), which general purposes are to give to plaintiff the usufructory benefit of the property during her lifetime and upon her death to see that the property goes to her nominees under her will, or, failing of such nomination, to those who are her heirs at law at the time of her death under the laws of succession as they existed at the time of the making of the trust. Plaintiff's usufructory interest in the whole estate during her life is her equitable life estate, to which is added the power of nominating those who shall take the legal and equitable fee at her death and thus terminate the trust. The trust itself is not a dry, naked trust, since active duties are imposed upon the trustee during the life of the plaintiff, and a no less active duty upon her death in causing to be determined, should she

fail to nominate, those entitled to take the property. The settlor or trustor reserved no power of revocation, and the trust is therefore irrevocable by any act of plaintiff. (Civ. Code, sec. 2280; *Hellman* v. *McWilliams*, 70 Cal. 449, [11 Pac. 659]; *Scrivner* v. *Dietz*, 84 Cal. 297, [24 Pac. 171]; *Kopp* v. *Gunther*, 95 Cal. 63, [30 Pac. 301]; *Salisbury* v. *Bigelow*, 20 Pick. (Mass.) 174; *Stone* v. *Hackett*, 12 Gray (Mass.), 227; *Viney* v. *Abbott*, 109 Mass. 300.)

We have so far refrained from using the word "remainder" or "remaindermen" in connection with this trust, for the creation by the trust of such remainders and remaindermen is the very heart of the controversy between these litigants. By appellant it is contended that such remainders are created and with them estates in the remaindermen, which it is beyond the just exercise of the powers of equity to destroy. Upon the other hand, it is contended that no such remainders are created; that the whole equitable estate is in the trustor, plaintiff herein, and that she is entitled to address herself to equity for the relief here obtained—the relief which will terminate a dry and naked trust, establishing the legal estate in the person who possesses the full equitable estate.

It is only when all the parties in interest are before a court, when each is *sui generis*, and all join in the application, that a court of equity ever terminates a valid trust. And even when all these circumstances exist, equity does not do so by force of the application, but only when a decree so doing is meet and proper. When such circumstances exist power is in the court of equity to terminate the trust, but with that power is not necessarily imposed the duty so to do. It is still discretionary. (Perry on Trusts, sec. 920; 39 Cyc. 99; *Eakle* v. *Ingram*, 142 Cal. 15, [100 Am. St. Rep. 99, 75 Pac. 566]; *Hildreth* v. *Elliot*, 8 Pick. (Mass.) 293; *Wenzel* v. *Powder*, 100 Md. 36, [108 Am. St. Rep. 380, 59 Atl. 194]; *Godfrey* v. *Roberts*, 65 N. J. Eq. 323, [55 Atl. 353]; *May* v. *Walter's Executors*, 30 Ky. Law Rep. 59, [97 S. W. 423]; *In re Lewis' Estate*, 231 Pa. 60, [79 Atl. 921]; *Estate of Yates*, 170 Cal. 254, [149 Pac. 555].) The converse of this proposition follows as matter of course. If all of the parties in interest are not before the court, equity has no power to terminate the trust. (Civ. Code, sec. 2280; 2 Perry on Trusts, 6th ed., sec. 920; *Brown* v. *Brown*, 97 Ga. 531, [33 L. R. A. 816, 25 S. E. 353]; 39 Cyc. 99.) The importance of this

consideration arises from the fact that if remainders and remaindermen were created, admittedly the latter were not before the court and its decree must fall. And thus by this different method of approach we are brought to the vital consideration in the case: Were such remainders created?

Our Civil Code (section 769) declares that "When a future estate, other than a reversion, is dependent on a precedent estate, it may be called a remainder, and may be created and transferred by that name." We have in this trust apt language to create such a future estate, dependent for its enjoyment upon the termination of a precedent life estate. We have therefore apt language to create a remainder, and it is quite permissible that it should be created to commence at a future day and be limited upon a life estate. (Civ. Code, sec. 773.) There is in this trust a power of appointment or nomination reserved to the trustor. It can be exercised in but one way, and that is by her will. But such power of appointment does not prevent the vesting of the future estate in remainder. (Civ. Code, sec. 781.) Everything, then, which the law contemplates shall exist for the creation of equitable remainders or remainders in trust is found in this trust. Whether they be regarded as vested or contingent is immaterial, for in either case the estate and interest are alienable. (*Davis* v. *Willson,* 115 Ky. 639, [74 S. W. 696]; *McDonald* v. *Bayard Sav. Bank,* 123 Iowa, 413, [98 N. W. 1025]; *Sikemeier* v. *Galvin,* 124 Mo. 367, [27 S. W. 551].) But in truth these remainders are to be regarded as vested remainders, subject to divestiture only upon the exercise of the power of nomination by will reserved to the trustor. A case substantially identical with this was presented by *Crackanthorpe* v. *Sickles,* 141 N. Y. Supp. 370, [156 App. Div. 753]. There, as here, the plaintiff, an unmarried woman, conveyed property to a trustee to invest and manage and pay the net income thereof to her during her life, and at her death to distribute it to such persons as she might designate by her will, or, should she die intestate, then to divide the property among her lawful issue, which she might leave surviving. In that case, as in this, plaintiff sought a dissolution of the trust, claiming to be the only person beneficially interested therein. The court in disposing of these contentions said:

"It must therefore be determined just what the interest of these children is. The effect of the deed was to vest in the

plaintiff an equitable life estate in the property, with a general power of appointment by will to any person or persons whom she might designate. In default of an appointment of successors to the property pursuant to the power, the deed created a remainder to the lawful issue of the plaintiff who should survive her.

"It is a well-established rule, both of the common law and by statute, in this state that estates in remainder which are limited to take effect upon default in the exercise of a power of appointment are not prevented from vesting by the existence of the power, but take effect in the same manner as if no power existed, subject, however, to be divested by an exercise of the power. . . .

"By virtue of this clause of the deed there sprung into being upon the birth of each child of the plaintiff a vested remainder, subject to open up and let in after-born children, and to be divested either by the death of such child without issue before the death of the plaintiff or by the plaintiff's exercising her power of appointment by will.

"It is needless to add that such an interest is alienable. (*Moore* v. *Littel,* 41 N. Y. 66; *Campbell* v. *Stokes,* 142 N. Y. 23, [36 N. E. 811]; *Matter of Chapman,* 133 App. Div. 337, [117 N. Y. Supp. 679]; *Shindler* v. *Robinson,* 150 App. Div. 875, at page 881, [135 N. Y. Supp. 1056]; New York Real Property Law, sec. 40.) It follows, therefore, that the children of the plaintiff are persons beneficially interested in the deed of trust, and it cannot be revoked without their consent. They are also necessary parties defendant."

Respondent places reliance upon certain cases as supporting the decree of the court terminating this trust. Those cases, however, deal with a dry, naked trust or with a trust where every party in interest is before the court joining in the application, or rest expressly or by necessary implication upon the rule in Shelley's case. But this ancient rule was of feudal origin and policy, and did deliberate and designed violence to the deed of the grantor or the will of the testator, to the end that the laws of inheritance should prevail over the wish of the grantor or testator. It arbitrarily declared that apt words which indisputably created a remainder in the heirs should be held as a "limitation." In other words, as a definition of the estate which the grantee or devisee took, and that that estate was the fee simple, the remaindermen

being thus cut off and taking nothing. So obnoxious was this rule to justice that it was always subjected to rigidly strict construction, till finally in many states, as in this state, it was absolutely repealed. (Civ. Code, sec. 779; *Barnett* v. *Barnett*, 104 Cal. 298, [37 Pac. 1049].) The effect of the repeal of this arbitrary rule is to restore to courts of equity their right to construe this language, in whatever instrument it may be found, in accordance with its plain import and intent.

A brief review of the cases relied on by plaintiff should follow the general statement concerning them which has been given above. The first of these is *Eakle* v. *Ingram*, 142 Cal. 15, [100 Am. St. Rep. 99, 75 Pac. 566]. Mrs. Hammack had conveyed certain property to her daughter, Mrs. Eakle, in trust, to pay over the rents and profits of the property to the mother during her lifetime and after her death to pay them to her son, Henry Hammack. There was no remainder over after the termination of these equitable interests for life. Mrs. Hammack died, leaving as her heirs four children, Mrs. Eakle, Mrs. Bean, George and Henry Hammack. Mrs. Eakle resigned as trustee and Ingram, defendant in the action, was appointed in her place. Mrs. Hammack's four children who had thus inherited the trust property, and one of whom was beneficially interested in the rents and profits of the property during his life, all joined in their petition to the court to have the trust annulled. Every party in interest was before the court. The only person whose rights could be injuriously affected by the termination of the trust was Henry Hammack, who joined in the request that it be terminated. Under this condition the court in equity terminated the trust, not under the compulsion of any rules or principles of equity, but because all the parties in interest being before it, all assenting and indeed requesting that the court do this thing, it was within its power so to do in a proper case and it considered that to be a proper case. Manifestly, this decision has no bearing upon the questions involved in the case at bar, where the gravamen of the complaint is that all of the parties in interest are not before the court and are not consenting. It is perfectly plain, for example, that if Henry Hammack had objected the court in equity could not have destroyed his equitable life estate.

In *Dodson* v. *Ball,* 60 Pa. St. 492, [100 Am. Dec. 586], the rule in Shelley's case, prevailing in Pennsylvania, is the unquestioned foundation of the construction of the trust and of the decree given. The discussion is too long to quote, but the holding is that the words employed bring the trust within the rule in Shelley's case; that remainders therefore are not created; that all the equitable interest is in Mrs. Dodson and that the legal estate should therefore be executed in her. And a sufficient exemplification of this may be found in the following single sentence, where that court, after reviewing many of its own authorities, said: "Those cases decide that a devise for life, with remainder to children and their heirs, and in some of the cases with superadded words of distribution, gave an estate of inheritance to the life tenant."

In *Raffel* v. *Safe Deposit & Trust Co.,* 100 Md. 141, [59 Atl. 702], the plaintiff had executed a deed of trust to pay the net income of the property conveyed to her, "reserving, however, the right by a last will and testament to bequeath and devise all of the property that may be a part of the trust estate," and upon failure to execute such last will the part undisposed of at the time of her death "to vest in her next of kin or heirs according to law." The case is not a simple one in its facts. The equitable questions touching the construction of the instrument are complicated by the contention of the trustor that she did not understand what she was doing; that she believed she had retained a power of revocation; that she was inexperienced in business matters and did not at all understand the effect of her deed. Discussing these considerations, sufficient in themselves to work an avoidance of the trust, the court said: "According to the facts and preponderance of proof in the case the plaintiff did not intend by the deed to surrender control of her property, and that it was executed by her under a mistaken belief as to her power to revoke it. It also appears that she was misadvised as to the legal effect of the deed and her rights under it." So far as the construction of plaintiff's deed is concerned, the rule in Shelley's case prevailing in the state of Maryland, the court's discussion is addressed to the application of that rule, to a review of its cases based on that rule, and the determination is reached that plaintiff is the sole party in interest since "there are no vested rights in remainder created by the deed, nor are the rights of third parties or creditors in any

way involved." The court's conclusion upon the whole matter is that "A deed executed under such circumstances cannot be upheld nor treated as a free, voluntary and unbiased act of the grantor."

*Cornwell* v. *Orton,* 126 Mo. 360, [27 S. W. 536], was not an action to terminate a trust, but an action in ejectment brought by the heirs at law. The grantor conveyed property to a trustee on the trust that he would allow Mrs. Cornwell to occupy the property conveyed and have all the rents and profits thereof, and that the trustee "would at any and all times thereafter, at the request and direction of said Catherine Cornwell, expressed in writing, signed by her, or by her authority, bargain, sell, mortgage, convey, lease, rent, or thereupon dispose of said premises or any part thereof, . . . and that he would at her death convey and dispose of the premises and all profits and proceeds thereof in such manner, to such person or persons, and at such time or times, as Catherine Cornwell by her last will and testament, or by any other writing signed by her or her authority, direct or appoint, and in default of such appointment then he would convey said property to James Cornwell, his heirs and assigns," James Cornwell being the husband of Catherine. The contention upon the one hand was that the deed vested a fee-simple estate in Mrs. Cornwell, and that the direction of the trustee to convey to James Cornwell, his heirs and assigns in the event that Catherine Cornwell failed to nominate, was a nugatory provision, as it was an attempt to create a remainder upon an absolute fee. The opposing contention was that under the true construction of the deed it conveyed a life estate only to Mrs. Cornwell, with power in the trustee to convey the fee in remainder to her husband or his heirs, in the event that she failed to exercise her right to appoint. The court considered at length the terms of the trust, the absolute power of disposition given to Mrs. Cornwell over all of the property during her lifetime, the compulsion upon the trustee to do any and all things concerning the property which Mrs. Cornwell might direct, declared that the language was inadequate to create a mere life estate and was fully adequate to the creation of a fee-simple absolute, and determined that the trust was a naked trust and that the fee simple absolute did vest in Mrs. Cornwell; wherefore the remainder attempted to be erected upon it was void. It needs no argu-

ment to show that such a conclusion could not, and would
not, be arrived at in construing a trust such as this, where
the beneficiary of the equitable life estate not only has no
power of disposition of the *corpus* of the trust property, but
no power to control its investments, no power even to dispose
of the property except by a disposition taking effect upon
her death under her will, which, to be a will, must of course
be an instrument complying with all the terms of our statutes
in regard thereto.

*Sears* v. *Choate,* 146 Mass. 395, [4 Am. St. Rep. 320, 15
N. E. 786], was an action brought by the plaintiff to ter-
minate a trust created for his benefit by the will of his father.
By this will the father devised his residuary estate to trus-
tees, who were to pay to plaintiff at the age of twenty-one
a certain sum of money; thereafter the sum of four thousand
dollars annually until he was twenty-five years of age; there-
after six thousand dollars annually until he was thirty years
of age, and thereafter ten thousand dollars annually. This
son was his only child and sole heir at law. There was no
limitation over to any person upon the death of this son. The
court points out this fact, saying: "There is in the will no
limitation over of the estate in any contingency to any other
person." The son was the sole person in interest and was
before the court, and says the court further: "Where prop-
erty is given to certain persons for their benefit and in such a
manner that no other person can have any interest in it, they
are in effect the absolute owners of it and should have the
control and disposal of it, unless some good cause appears to
the contrary." Here was a plain case where equity, not un-
der compulsion but in the exercise of its wise discretion,
deemed it advisable to terminate a trust and did so. It pre-
sents similar features of equitable consideration to those
which appeared in *Estate of Yates,* 170 Cal. 254, [149 Pac.
555], where this court refused to terminate a trust.

In *Warner* v. *Sprigg,* 62 Md. 14, the testator devised his
estate to three trustees to hold for his three children, and
then provided, "after the decease of my said sons respectively
their shares to go to their several heirs at law, as also the
share of my said daughter should she die having made no
testamentary disposition thereof." It is held that the trust
in the real estate involved no powers or duties in the trustees.
By virtue of the statute of uses of 27 Henry VIII, chapter 10,

it was therefore executed in the children who thereby took legal estates under the will, while as to the devises to their heirs at law after their decease, under the rule in Shelley's case, remainders were not created, but the children took the fee. In this state neither the statute of uses nor the rule in Shelley's case forms a part of the body of our law.

In *Angle* v. *Marshall*, 55 W. Va. 671, [47 S. E. 382], a life tenant becoming physically infirm conveyed his life estate to a trustee to manage the farm, but always under the control and advice of the life tenant. This was all of the trust. The remaindermen—the children of the life tenant—subsequently conveyed their title and the life tenant thereupon conveyed his interest to the same grantee. The trust deed of the life tenant declared that it was irrevocable. The court held that the trust deed was in fact nothing more than an agency or power of attorney, and that notwithstanding that it was declared to be irrevocable, as the power was not coupled with an interest, it was always revocable. The inapplicability of this decision to the questions here calling for determination is, we think, most obvious.

This concludes the review of all the cases upon which respondent relies, and if it shall be thought that this review does not justify to the fullest extent the comments heretofore made as to their general inapplicability, it may be said in conclusion upon the matter that the question is satisfactorily and conclusively disposed of against respondent's contention by our own decision in *Barnett* v. *Barnett*, 104 Cal. 298, [37 Pac. 1049]. There was a grant of lands to the "party of the second part for and during his natural life and to the issue and heirs of the body of the said second party." This court declaring that under the rule in Shelley's case this language would vest the fee simple absolute in the party of the second part, held and declared that by force of section 779 of the Civil Code that rule was abrogated and remainders were created, saying: "By section 779 of the Civil Code the term 'heirs' is changed from a word of limitation to one of purchase, and becomes a specific designation of a class which will have the right to the property upon the termination of the life estate. Upon that event they take the property, not by descent or as successors of the plaintiff, but by virtue of the remainder which was created for them at the execution of the deed to him. This remainder, although not capable of

immediate enjoyment (Civ. Code, sec. 690), and, therefore, denominated a future interest, is nevertheless an estate in the property capable of being transferred in the same manner as a present interest. (Civ. Code, sec. 699.) Counsel for appellant states in his brief that the only question on this appeal is 'whether the deed in question conveyed an estate in fee simple to plaintiff, or a life estate to plaintiff, with remainder in fee to the issue and heirs of her body'; and we therefore limit our decision to this proposition, and hold that by the instrument in question a life estate only was conveyed to the plaintiff.''

The conclusiveness of this determination, its immediate and direct bearing upon the language of this trust deed, are so plain as to relieve the question from the need of further discussion.

The decree appealed from is therefore reversed, with directions to the trial court to deny to plaintiff the relief sought.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.