[Civ. No. 11633.   First Dist., Div. One.—June 30, 1941.]

Estate of JOHN D. EASTERDAY, Deceased.   JOHN W. EASTERDAY, Appellant, v. AMERICAN TRUST COMPANY, (a Banking Corporation), Respondent.

Lloyd W. Dinkelspiel, Donald W. Falconer and Heller, Ehrman, White & McAuliffe for Appellant.

Fry & Jenkins and Franklin Dill for Respondent.

PETERS, P. J.—John W. Easterday appeals from a decree of final distribution entered in the estate of his father.

The decedent devised his estate to respondent American Trust Company in trust to pay the net income to his son, the appellant, for life, and upon his death to convert the *corpus* into money or bonds, to be delivered to descendants of the testator's predeceased brother, of two predeceased sisters, and of one sister who was living when the will was executed. Under the will, one-fourth of the *corpus,* upon the death of appellant, was to be delivered to the testator's niece, Clara M. Prentice, daughter of the testator's predeceased brother. She has assigned her remainder interest to appellant. He contends that, since he has become the owner of the life and remainder interests in this fraction of the estate, this one-fourth interest should be distributed to him absolutely, rather than to the trustee, since he is now the sole person who has any beneficial interest therein. This result should follow, he contends, even though the interest of Mrs. Prentice is contingent on her surviving appellant. In such event, should she predecease him, there would be an intestacy as to this one-fourth interest, to which he would succeed as the sole heir of his father. There is no provision that in the event of the death of Mrs. Prentice her share shall go to her issue. The legacy to her is as follows: "To Clara M. Prentice, my niece, being the only daughter of my deceased brother, William T. Easterday, residing at San Francisco, California, one-fourth (¼) of the residue of said trust fund."

Appellant further contends that by reason of the wording of the provision for the descendants of the testator's predeceased sister, Elizabeth H. Spitzer, there is an intestacy as to 6/28 of the *corpus* upon the termination of the trust, to which he succeeds as the heir of his father, and that this fraction also should be distributed to him absolutely.

Appellant also contends that remainder interests in the balance of the property vested in descendants of the testator's predeceased sisters living at the testator's death, rather than in descendants living at the death of appellant, the life beneficiary. He desires such a construction of the will in order that he may seek to acquire their interests and terminate the trust, thereby acquiring the balance of the estate absolutely.

If persons yet unborn have a contingent interest in trust property, a life beneficiary who has acquired the interest of living remaindermen may not terminate the trust. (*Gray* v. *Union Trust Co.,* 171 Cal. 637 [154 Pac. 306]; *Fletcher* v. *Los Angeles Trust etc. Bank,* 182 Cal. 177 [187 Pac. 425]; *Woestman* v. *Union Trust etc. Bank,* 50 Cal. App. 604 [195 Pac. 944]; *Hunt* v. *Lawton,* 76 Cal. App. 655 [245 Pac. 803]; 4 Bogert, Trusts and Trustees, § 1002, p. 2930.)

The court refused to terminate the trust in part. It ordered the entire estate distributed to the trustee. It decreed that the entire *corpus* should be held in trust until appellant's death, and, further, that, upon appellant's death, the one-quarter Prentice interest should be distributed to appellant's executors, administrators, heirs or assigns, inasmuch as appellant has become the owner of the Prentice interest. The court also found that there was no intestacy as to the 6/28 interest on termination of the trust.

The theory of respondent trustee, sustained by the trial court, is that the testator, in his son's own interest, created a trust for his benefit, because he deemed him incompetent to manage the property, and did not wish him to have its control. Respondent urges that in such circumstances the court should give effect to the intention of the testator and refuse termination even as to portions of the trust principal in which no one but appellant has any beneficial interest. It is our opinion that, under the facts of this case, and the authorities hereafter cited, this contention is sound.

The testator died on October 18, 1936. By his will, dated October 17, 1927, he originally gave $2,000 to his sister, Lucy Blake, and $1,200 to appellant's divorced wife, Gertrude Bennett. He named the respondent, American Trust Company, executor. By paragraph fourth he gave, devised and bequeathed the residue of his estate to the American Trust Company, in trust as set forth in subsequent paragraphs. The trustee was given broad powers to sell the trust property,

invest and reinvest the proceeds, and generally to do every act which it deemed for the best interests of the trust estate. The two specific money bequests were revoked by codicils, with the result that paragraph fourth operated upon the entire estate remaining for distribution, found to be. of the value of $40,773.87 in the decree of distribution.

The provision by which the income is given to appellant is as follows:

"That the said trustee shall pay all taxes, assessments and other charges and expenses of every kind and nature against or in connection with the trust estate and this trust, and shall pay the net income from the trust estate to my son, John Wallace Easterday, for and during his natural life." (Paragraph fourth, subdivision 2.)

Immediately following, in subdivision 3 of paragraph fourth, is the provision for division of the *corpus* upon the death of the son. It commences: "That upon the death of my son, John Wallace Easterday, this trust shall terminate and the trustee shall convert, if necessary, any real property that may be in its possession so that all the estate may be converted into money or bonds in such denomination that the same may be delivered to the following persons, to wit:

"(a) To Clara M. Prentice, my niece, being the only daughter of my deceased brother, William T. Easterday, residing at San Francisco, California, one-fourth ($\frac{1}{4}$) of the residue of said trust fund."

The bequest to Mrs. Prentice is followed by the several provisions relating to the descendants of the three sisters of the testator. The paragraph relating to children of his sister, Lucy Ellen Blake, is typical, and reads as follows:

"(d) To Thomas F. Blake, John H. Blake and Stella I. Wilson, being children of my sister, Lucy Ellen Blake, a one-fourth ($\frac{1}{4}$) interest in the residue of the said estate, share and share alike, but in the event of the death of any of said nephews and niece without issue, then his or their share shall go equally to the survivor or survivors."

The will further provided that pending distribution the trustee should pay $100 a month to the son, who was thirty-six years of age at his father's death. It contained no spendthrift provisions by which alienation by the son was prohibited and the trust benefits placed beyond the reach of his creditors. The appellant in fact had assigned his interest to a bank as security for advances, and, accordingly, the decree

of distribution provided that income otherwise payable to him should be paid to the bank until the loans were discharged.

Over the objection of appellant, the respondent was permitted to introduce further evidence after the hearing on the trustee's petition for distribution had been concluded and the case had been continued to permit further argument after filing briefs. Attorney H. Ray Fry, who drew the will, and who is a member of the firm representing the trustee in the present proceeding, testified at the further hearing that the testator instructed him that he wished to create the trust to protect his son; that the boy needed "looking after"; that he could "give him these things", but it would only lead to his spending sums of money. The attorney suggested a spendthrift trust. The testator replied, according to the attorney's testimony: "No, I don't want such, I understand spendthrift trusts, and I don't want a spendthrift trust. I want him to get the income of this for, during his natural life. I want it so he can't go around and beat his creditors. I want him to live an honest, upright life. I am looking out for his interest."

The attorney further testified: "Concerning the protection of the son against disposal of his interest, the father was very careful about that. He wanted to fix it so that the estate would remain intact and for the son to get an income which would be sufficient during his life."

Fry also testified to difficulties between father and son over a long period. The son was unable to support himself and continually made demands on his father. He was unwilling to live in his father's home, in part because of friction with his aunt, who also lived there. His mother had died in childbirth. At the request of the father, and to save him "from being followed and molested by an ungracious son", it was arranged that Fry should handle advances to the son. In 1932 the son brought a maintenance action to compel his father to pay $100 a month for his support. The complaint averred that plaintiff was a confirmed invalid, that he had been for the past four years and always would be unable to maintain himself by work or in any other way. Further proceedings in the maintenance action do not appear from the bill of exceptions herein, except that it is to be inferred that no order was made against the father, since Fry testified that after this action the father refused demands of the son for

money. Fry also testified that he believed the son had applied for relief in Los Angeles since he had received inquiries from relief committees there. Appellant contends that Fry's testimony was inadmissible for the reason that by such parol evidence the respondent was attempting to vary or add to the will.

Under these facts, it is our opinion that the trial court did not abuse its powers in refusing to terminate the trust as to the one-fourth Prentice interest now owned by appellant. ▪▪▪ It is also our opinion that the parol testimony was admissible. ▪▪▪ It is the law in a majority of American jurisdictions that where a trust is established with the object of placing the trust property beyond the control of the beneficiary, effect may be given to this intention and termination of the trust denied, although all persons who will have an interest in the trust upon its termination are in being and *sui juris* and assign their interest to the sole life beneficiary, or otherwise consent to termination of the trust. This rule applies even though there is no spendthrift provision in the trust.

In an annotation in 123 A. L. R. 1427, entitled, "Termination of trust by consent of beneficiaries", where many cases are collected, it is said: "It may be stated at the outset that subject to considerations of public policy, the right of an owner of property to project his wishes into the future to regulate the disposition of his property is recognized in law, and any rule purporting to deal with the right of the beneficiaries to terminate a trust by mutual consent before the expiration of the limitation prescribed for the trust by its creator must, of necessity, be subordinate to the expressed or implied purposes of the settlor in creating the trust, and to his express or implied direction not to terminate the trust within its fixed duration. If those purposes are not executed but remain executory, and if they require the continuance of the trust so that the wishes and desires of the creator may be substantiated, by the better view the trust will not be terminated, although all the beneficiaries, both those who have a present interest in the trust and those who have or may have a future interest, vested or contingent, mutually consent to the termination of the trust and the surrender of the trust property to the respective beneficiaries as their interest may appear under the trust instrument."

In 2 A. L. R. 579, in an annotation entitled, ''Effect of acquisition of remainder by beneficiary of a trust for life'', is the following statement: ''But the acquisition of the remainder will terminate the trust only where the effect is to do away with the necessity for its continuance; hence, it will not have such effect where the evident purpose of the trust is to put the *corpus* of the fund beyond the hazard of impairment and waste during the life of the beneficiary.'' But, ''where the only purpose of the trust is to preserve the *corpus* of the fund for the person entitled to receive it, the acquisition by the life beneficiary of the right to receive the *corpus* at the termination of the trust, whether by purchase or inheritance, gives such beneficiary the right to have the trust dissolved.'' (See, also, 4 Bogert, Trusts and Trustees, § 998, p. 2915.)

The rule is expressed in the Restatement of the Law of Trusts, § 337, as follows:

''(1) Except as stated in Subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

''(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination.''

Comment e is as follows: ''If the purposes for which the trust is created are expressed in the instrument by which the trust is created, a different purpose cannot be shown by extrinsic evidence. If, however, the purposes are not expressed in the instrument, extrinsic evidence of the surrounding circumstances to aid in the construction of the instrument is admissible in order to determine the purposes of the trust.'' (2 Restatement of the Law of Trusts, p. 1022.)

Comment g states: ''If a trust is created for successive beneficiaries and it is not the only purpose of the trust to give the beneficial interest in the trust property to one beneficiary for a designated period and to preserve the principal for the other beneficiary, but there are other purposes of the trust which have not been fully accomplished, the trust will not be terminated merely because both of the beneficiaries desire to terminate it, or one of them acquires the interest of the other.

''Thus, if one of the purposes of the trust is to deprive the beneficiary entitled to income of the management of the trust property for the period during which he is entitled to the income, the trust will not be terminated during the period,

although both of the beneficiaries are of full capacity and desire to terminate it.'' (2 Restatement of the Law of Trusts, p. 1025.)

The law in this state, both as to refusing termination where the intent of the trustor was to deny the trust beneficiary control of the principal, and as to the admissibility of parol evidence to prove such intent, is in accord with the Restatement. In *Estate of Yates,* 170 Cal. 254 [149 Pac. 555], the testator established trusts under which principal and interest were to be paid to named beneficiaries at the age of twenty-five. In so far as the provision was for accumulation of income beyond the age of minority of the beneficiaries it was invalid, and such beneficiaries became entitled to receive it on attaining majority. But that part of the decree which terminated the trusts as to those of the beneficiaries who were of age when the estate was distributed was reversed. The court was of the view that the interest of the beneficiaries had vested on the death of the testator, with the result that they had an absolute, indefeasible and disposable interest, the time of payment only being postponed. Upon the death of any beneficiary before reaching twenty-five, his interest would fall into his estate. Nevertheless, the court held that to give effect to the plain intent of the testator the trust should continue for the time specified. The court indicated that in England the rule was otherwise, and that there a legatee who is sole beneficiary and entitled to the remainder may terminate the trust if competent to give a discharge. (See, 4 Bogert, Trusts and Trustees, § 1002, p. 2933; 46 Yale Law Journal, 1007.)

Appellant herein contends that cases where the same person is by the terms of the trust instrument entitled to the income and to the principal when the trust ends are distinguishable from the present case. Where termination in the first situation is refused the intent of the testator may be carried out. The person named in the trust instrument may receive the income and principal. But here the will provides that Mrs. Prentice should receive one-fourth of the *corpus* when the trust ends. This intent will not in any event be carried out, since she has assigned her interest to the life beneficiary. This argument overlooks the fact that a major object of the testator was to deny his son management of the property, for the son's own protection, while giving him the entire net income for life. This object may be carried out

notwithstanding the disposition of the property at the end of the trust may not follow the plan set by the testator by reason of an assignment to the life tenant by a person named to share in its ultimate division.

*Estate of Yates, supra,* also holds that, notwithstanding the trust lacks spendthrift features, termination may be denied. The court stated (170 Cal. at p. 257) : ''The trustor may have had good reason, as in the case of a spendthrift son, for desiring that the principal sum of his bounty should not go absolutely to the legatee upon his attaining majority. Because the legatee himself might circumvent this purpose by making a sale of his vested interest is not, we think, a sufficient ground for destroying the legal intent of a trustor in creating such a trust. The fact that because of the particular wording of a valid trust the legatee may himself impair its efficacy is not a justification for equity to do so.'' The life beneficiary may be unable to find a buyer for an uncertain interest depending on the duration of his life. (See, 4 Bogert, Trusts and Trustees, § 1002, p. 2938; 2 Restatement, Trusts, § 337, p. 1028, comment k.)

In the following cases in which all persons prospectively interested in the trust *corpus* were not in being or not before the court, the opinions nevertheless recognized that even when all parties in interest consent, termination of the trust is discretionary with the court: *Gray* v. *Union Trust Co., supra,* 641; *Fletcher* v. *Los Angeles Trust etc. Bank, supra,* 180; *Woestman* v. *Union Trust etc. Bank, supra; Estate of Washburn,* 11 Cal. App. 735 [106 Pac. 415].

Appellant relies on *Eakle* v. *Ingram,* 142 Cal. 15 [75 Pac. 566, 100 Am. St. Rep. 99], as establishing a rule requiring termination of the trust herein. Under the trust instrument the trustor was to receive the income for her life, and on her death it was to be paid to her son Henry for his life. There was no provision as to the disposition of the principal on the death of Henry. Following death of the mother intestate, her four children, who were her heirs at law, including Henry, sought to terminate the trust. Judgment in their favor was affirmed, all parties in interest being before the court. The opinion stated that continuance of the trust would result in the unnecessary sacrifice of a great part of its value, if not in its total loss. It does not appear that it was contended that the income had been given to the son Henry because the

trustor did not wish him to have control of the principal. (See, also, *Moor* v. *Vawter*, 84 Cal. App. 678 [258 Pac. 622], and *Whittingham* v. *California Trust Co.*, 214 Cal. 128 [4 Pac. (2d) 142], where trusts were terminated.)

Whether the rule that termination is discretionary with the court although all parties in interest consent, limits the court to the exercise of discretion in determining whether termination violates the intent of the trustor, or whether in exceptional cases the court may determine, as in England, that sound public policy calls for disregard of the wish of the deceased trustor in the interest of the living beneficiary, it is not necessary here to decide. The evidence in the instant case plainly shows that it was the purpose of the testator that his son should, for his own good, not have control of the principal, and that, in the circumstances, his purpose was a wise one. (A rule which permits no departure from the intent of the trustor has been criticised as of no practical individual or social benefit, and as paying undue deference to the "dead hand". 4 Bogert, Trusts and Trustees, § 1002, p. 2940; 46 Yale Law Journal, 1007, 1011.)

We have heretofore indicated that appellant's objection to admission of evidence bearing on the purpose of the testator is not well taken. The evidence received does not contradict the will. There is no ambiguous language in the will. By its terms the trust is to continue during the lifetime of the appellant. It is appellant himself who seeks to end it before the time provided in the will, and respondent who has offered evidence to uphold the will. We are not to be understood as indicating that evidence would be inadmissible to show that the sole purpose of the testator was to preserve the *corpus* for those to whom it is given when the trust ends, in which event it would be proper for the court to terminate the trust before the time provided in the will on the life beneficiary acquiring the interest of the remainderman. Since by reason of the life beneficiary acquiring the remainder interest the will is not to be carried out in full, it is pertinent to ascertain the intent of the testator with a view to determining what should be done in the changed circumstances. (For other situations in which evidence of the declarations of the testator is admissible, see, *Estate of Dominici*, 151 Cal. 181 [90 Pac. 448] ; *Estate of Little*, 170 Cal. 52 [148 Pac. 194] ; *Estate of Donnellan*, 164 Cal. 15; *Estate of Brisacher*, 27 Cal. App. (2d) 327 [80 Pac. (2d) 1033].)

The above discussion disposes of appellant's contention as to his right to terminate the trust. In so far as the right to terminate is concerned, it is not necessary to determine if there will be an intestacy as to part of the principal upon the termination of the trust, or to decide whether the interests to take effect in possession when the trust ends vested on the testator's death in descendants of his sisters living at the testator's death, or whether persons unborn have a contingent interest. In any event, appellant is not now entitled to terminate the trust.

■ However, appellant's interest as the sole heir at law of his father if an intestacy exists under the terms of the will, or may arise by the lapse of any bequest, gives him the right to urge that any uncertainty in the will in this regard should be construed by the decree of distribution. When there is any question as to the effect of a will, the probate court should construe it and define the interest of each devisee. (*Estate of Scrimger,* 188 Cal. 158, 165 [206 Pac. 65] ; *Goldtree* v. *Allison,* 119 Cal. 344 [51 Pac. 561] ; 11B Cal. Jur., 773, 798.) ■ While appellant can have no interest in possession as to property concerning which there is an intestacy on termination of the trust, since it is to continue until his death, the effect of such an intestacy is to give him an interest of which he may dispose by will, or to which his heirs may succeed. (*Estate of Blake,* 157 Cal. 448, 454, 469 [108 Pac. 287] ; *Estate of Hamon,* 136 Cal. App. 517 [29 Pac. (2d) 326].) The decree herein recognized such an inheritable interest in appellant as to the one-quarter Prentice interest assigned to him, inasmuch as it is therein provided that this interest should be distributed to the executor, administrator, heirs or assigns of appellant upon his death.

■ The court found in the decree of distribution that there was no intestacy as to 6/28 of the trust property on termination of the trust under section 3 (b) of paragraph fourth of the will. Appellant construes this paragraph as disposing of only 1/7 of 1/4 of the *corpus,* leaving an intestacy as to 6/7 of 1/4, or 6/28. The provision of the will follows:

"To David Higginbotham, Tom Higginbotham, Simon S. Higginbotham, Frank E. Higginbotham, John Higginbotham, Joseph S. Higginbotham, and the children of Lester Higginbotham, deceased, taken collectively, one-seventh (1/7) share of a one-fourth (1/4) share of the residue of my trust estate,

said legatees being the sons of my sister, Margaret Higginbotham, deceased, all residing at Ogden, Utah, and in the event of the death of any of said legatees without issue, his or their share shall be divided equally among the survivors.''

It is too clear to admit of doubt that the expressed intent of the testator was that the six living children of his sister Margaret should *each* receive 1/7 of 1/4, and that the children of Lester, deceased son of the sister, together should receive the remaining 1/7. It is the children of the deceased son of the sister who are to be taken collectively, not the six living children of the testator's sister and the children of her deceased son Lester. The law favors a construction which will avoid intestacy. Appellant's interpretation would result in an intestacy in a scheme plainly intended to dispose of the entire estate. To descendants of his predeceased brother and of each of his three predeceased sisters the testator gave a one-fourth of the trust principal.

While finding that there was not an intestacy as to the 6/28 interest, the court incorporated the provisions of the above paragraph in the decree, thereby including as a legatee Joseph S. Higginbotham, who predeceased the testator, leaving issue. Since the legatees named in this paragraph receive no interest in possession until the termination of the trust, it is suggested by respondent that this is a matter which can be corrected at that time, and, further, that appellant is not aggrieved by the error. However, as will later be pointed out, since the decree must be modified by reason of the fact that it names as a legatee Mary E. Leavitt, a niece of the testator who predeceased him without issue, and the will fails to include a gift over in the event of her death without issue, with the result that there is a partial intestacy upon the termination of the trust, it is in the interest of orderly procedure that at the same time the name of Joseph S. Higginbotham be deleted and provision for his issue inserted in lieu thereof, as provided by the will and section 92 of the Probate Code.

The provision in reference to Mary E. Leavitt is to be found in section 3 (c) of paragraph fourth. It reads as follows:

''To Mary E. Leavitt, residing at San Francisco, California, Frank E. Spitzer, residing at San Jose, California, Margaret Werner, residing at San Jose, California, Ethel Jensen, residing at San Francisco, California, Florence Virginia Davis, residing at Fresno, California, Mrs. Sally Pitnam, residing

at San Jose, California, being the living sons and daughters of my deceased sister, Elizabeth H. Spitzer, and Louis Spitzer of San Mateo, California, being the son of Louis Spitzer, a deceased son of Elizabeth H. Spitzer, deceased, a one-fourth (1/4) interest in the residue of the said estate, share and share alike, but in the event of the death of any of my said *nephews, or my grandnephew,* without issue, then his or their share shall go equally to the survivors.'' (Italics added.)

Since Mary E. Leavitt died without issue before the testator, unless this provision gives her share to the surviving descendants of the testator's predeceased sister, Elizabeth H. Spitzer, there is as to it an intestacy when the trust ends, in which appellant is interested as the heir at law of his father and over which he would have the right of testamentary disposition. The paragraph names as legatees five nieces and one nephew and one son of a deceased nephew, but the survivorship provision refers to the death of ''any of my said nephews, or my grandnephew, without issue.'' Nieces are not included in the survivorship provision. No reason is apparent as to why the testator would wish to exclude nieces in this section of his will. No other provision of the will makes this distinction. ▆ But the fact remains that in this provision the nieces are not included, and it is not within the power of this court to remake the testator's will so as to include them. (*Estate of Beldon,* 11 Cal. (2d) 108 [77 Pac. (2d) 1052]; *Estate of Maloney,* 27 Cal. App. (2d) 332 [80 Pac. (2d) 998].)

▆ The only other question presented is in reference to what persons are entitled to share in the trust estate when the trust ends upon the death of appellant. In order to be in a position to seek termination of the trust upon acquiring interests of living legatees, appellant has contended that only nieces and nephews, and issue of those who predeceased the testator, living at the testator's death share in the division of the trust property, and that such persons acquired vested remainders upon the testator's death, to the exclusion of any possibility of afterborn issue sharing in the division of the trust property. We have held heretofore that the trial court properly refused to terminate the trust, even as to the fraction of the estate in which appellant has the full beneficial interest. In view of this holding, it is to appellant's interest that it be held that the rights to take effect in enjoyment on

the termination of the trust do not vest until the death of appellant, who is the life beneficiary. In such event should all legatees and their issue predecease appellant, an unlikely but not impossible contingency, an intestacy would result from lapsing, in which appellant, as the sole heir of his father, is interested. (*Estate of Hamon, supra.*) In our view this is the effect of the decree of distribution.

The provision of the will for the children of the testator's sister, Lucy Ellen Blake, which is typical of the provisions for the children of other sisters of the testator, is as follows:

"(d) To Thomas F. Blake, John H. Blake and Stella I. Wilson, being children of my sister, Lucy Ellen Blake, a one-fourth ($\frac{1}{4}$) interest in the residue of the said estate, share and share alike, but in the event of the death of any of said nephews and niece without issue, then his or their share shall go equally to the survivor or survivors."

The decree makes distribution in the language of the will, as follows: "To Thomas F. Blake, John H. Blake and Stella I. Wilson, children of Lucy Ellen Blake, sister of deceased, a one-fourth interest in the residue of said estate share and share alike, but in the event of the death of any of said nephews and niece of the deceased without issue, then his or their share shall go equally to the survivor or survivors." In his objections filed to the trustee's petition for distribution, appellant urged that the will was ambiguous as to the persons entitled to receive the remainder interests on termination of the trust, and that it required construction by the court. The court found in the decree of distribution that these objections were not good. Although the decree makes distribution in the language of the will, the reference in the decree to "death without issue" cannot reasonably be construed as referring to death without issue as a past event, that is, such death before the death of the testator, but must be construed as referring to death without issue in the future, that is, to death between distribution and termination of the trust on the death of the life beneficiary. If the court had interpreted the will as giving a vested interest, not liable to divest, to children of Lucy Ellen Blake living at the death of the testator, the reference in the decree to "death without issue" would be superfluous. In such event, the decree would simply provide: "(d) To Thomas F. Blake, John H. Blake and Stella I. Wilson, being children of my sister, Lucy Ellen Blake, a one-fourth ($\frac{1}{4}$) interest in the residue of said estate."

The effect of the decree, as rendered, is that in the event of the death of any of the three named children of Lucy Ellen Blake without issue before the death of appellant, his or her share goes to the survivors living at the death of appellant. In the event of the death of any one of the named legatees with issue during such period, there is a gift by implication to the issue of such legatee living at the death of appellant. (*Estate of Blake, supra,* 466; *Woestman* v. *Union Trust etc. Bank, supra.*) Should the named niece and two nephews and their issue all predecease the life beneficiary, there would be a lapsed gift to which appellant would succeed as sole heir of his father.

Appellant herein is not aggrieved by this interpretation of the trial court, since under it there is a contingency of intestacy in his favor. The respondent trustee urges that this construction is the correct one. The living nephews and nieces, and issue of any nephews and nieces who predeceased the testator, who are the parties aggrieved by error, if any, in the denial of interests vested as of the death of the testator, are apparently satisfied with the decree as thus interpreted, for they have not appealed. In the circumstances, there is no person before this court who is aggrieved by the interpretation of the decree as made by the trial court. This court, therefore, is not called upon to determine the propriety of that interpretation.

Those portions of the decree which are based on paragraph fourth of the will, sections 3b and 3c, are reversed with directions to the trial court to enter a decree in accordance with the views herein expressed. The balance of the decree is affirmed. Both parties to bear their own costs on this appeal.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1941.